## Jacques Gosserand *v.* Jean B. Lacour et al.

Parole evidence is inadmissible to shew the declarations of a surety, made at the time of his sign-
ing the note, but out of the presence of his co-surety—the object of which evidence was to show
what the surety supposed was the nature of his obligation.

A surety has a right to be subrogated to the principal's rights against his solidary co-surety, to the
extent of the co-surety's liability; and if the principal grants time to the co-surety, that would
defeat the surety's right to the subrogation—the surety is discharged.

APPEAL from the District Court, Ninth District. *Farrar, J.*
Suit on the following promissory note.

$3,543. Pointe Coupee, ce 20 Juin, 1849.

Dans tout Mars, mille huit cent cinquante, nous Jean B'te Lacour comme
principal, et Madame V. Pierre Gondran, et Monsieur Jean B'te Decuir comme
la caution, promettons de payer solidairement et l'un pour l'autre, à l'ordre de
Monsieur Jacques Gosserand, la somme de trois mille cinq cent quarante-trois
piastres pour valeur recue, avec interet à huit pour cent l'an depuis l'echéance
jusqu'à parfait paiement. [Signed] JEAN B. LACOUR,
JEAN B. DECUIR,
Chas. Hagan, temoin. V. P. GONDRAN.

The following is the substance of a Bill of Exceptions taken by one of the
defendants.

"Be it known that on the trial of this case, *Margeruite Decuir, &c.*, offered
a witness to prove that the principal on the note, *Jean B'te Lacour*, went to
ask from *Jean B'te Decuir* to sign the note as the surety of *Mad. Gondran;*
that the said *Decuir* stated that he would sign it, not as *Lacour's* security, but
as that of *Mad. Gondran,* &c. &c. The object of *Mad. Decuir* being by that
evidence to prove the intentions of her father, and the obligation he assumed
when he signed the note.

"It was not pretended that the note was signed in blank, and afterwards
filled up. Thus the testimony offered went to contradict by parol the written
obligation itself, and the object of the evidence being to bind the defendant,
*Gondran,* as principal in a written obligation in which she appeared to be a
surety, by proving a verbal statement made by the other surety out of her pre-
sence, the Court considered the evidence illegal and rejected it accordingly."

*Mahodeau,* for plaintiff. *Provosty* for *Lejeune,* and *Cooley* for *Gondran,*
defendants.

*Provosty* cited 2 R., 380; 5 A., 503; 11 R., 23; 5 A., 12; *Saulet* v. *Te-
paguder,* 2 A., 429; Troplong, *Cautionnement,* Nos. 553, 556.

Slidell, J. On the face of the note we consider *Madame Gondran* and *J.
B. Decuir* bound as sureties *in solido.*

We are of opinion that the District Judge did not err in excluding parole
evidence of the declarations of *Decuir,* made at the time of his signing the
note, but out of the presence of *Madame Gondran,* as to what he supposed was
the nature of his obligation.

It is undisputed that *Gosserand,* the holder of the note, gave time to *Madame
Gondran;* and the question arises whether this agreement affected, and if so,
to what extent, the liability of her co-surety *Decuir,* and his heir *Mrs. Lejeune.*

By the Article 3032 of the Code of 1825, it is said, the prolongation of the
term granted to the principal debtor, without the consent of the surety, operates
a discharge of the latter.

It is argued for the plaintiff that this article does not in terms cover the case
of time given to a co-surety. This is true. But we consider its spirit applica-

GOSSERAND
*v.*
LACOUR.

ble to the present question, especially when we revert to the pre-existing law, and the reasons suggested by the jurisconsults who prepared the amended Code, which is the law of this contract.

In the Code of 1808, under the head "Extinctions of Suretyship," is the following Article. "The simple prorogation of the term granted by the creditor to the principal debtor, does not exonerate the surety, who may in this case sue the said debtor, to compel him to make payment."

In presenting the amendment which was adopted by Article 3032, above cited, the jurisconsults submitted to the legislature the following remarks.

"This is an innovation on the principles acknowledged by authors, and an entire change of the provision as it existed before, in which it is declared that a mere prorogation of the term granted to the debtor should not discharge the surety. It is proper, therefore, that we should state the reasons which have induced us to propose this amendment.

"*Pothier*, from whom principally the French Code has adopted a provision similar to that which we propose to abolish, gives as a reason for his opinion, that where the creditor accords the debtor a prorogation of the time, this does not prevent the surety from acting against the debtor, and providing for his indemnity, if he perceives that the fortune of the debtor is beginning to diminish.

"Notwithstanding the respect due to an authority of such weight, we do not think that this doctrine is in accordance with general principles, as applicable to matters of suretyship, nor that it is just to drive the surety to this recourse. The obligation which the surety contracts is to pay at the time fixed by the contract, if the debtor himself does not. This security is given for a limited time. When the time of performing the obligation arrives, the surety should have the right of insisting on the execution of the contract, that he may be discharged, or at least that he may be informed of the amount which he has to pay. To prolong his obligation beyond the term fixed, is to force him beyond his undertaking; to subject him to conditions to which he did not mean to submit. In fine, *it is changing his contract.*" See Amendments, p. 119.

If we apply the spirit of these remarks and of the amendment to the case before us, how does the matter stand?

*Mrs. Decuir* had a right, as surety, to be subrogated to the rights of the plaintiff, under the original contract, against her co-surety to the extent of their share of liability, which *inter se* her co-surety was bound to have. For being bound as sureties *in solido*, either, on paying the whole debt had a right to resort to the co-surety to reimburse one half. But if the appellant had paid the plaintiff the whole claim, and demanded a subrogation of the rights of the plaintiff against *Madame Gondran*, the plaintiff could not have given it. By his agreement he was estopped from present suit. Thus the co-surety's right under the contract had been changed, to the co-surety's detriment, by the act of the creditors; and therefore, in our opinion, the co-surety's liability was *pro tanto* discharged.

We are of opinion, therefore, that the judgment against the appellant for the whole amount of the note and interest, was erroneous, and that the judgment should be reduced by one-half, being the amount of the share of the co-surety, *Mrs. Gondran*.

It is, therefore, decreed that the judgment of the Court below against *Mrs. Margaret Decuir*, wife of *Ovid Lejeune*, be reversed, and that the said plaintiff recover of the said *Margaret Decuir* the sum of $1771 50, with interest there-

on from the 3d April, 1850, until paid, at the rate of eight per cent.. per annum and costs of the suit against her in the Court below, the costs of the appeal to be paid by the plaintiff.