DAWKINS, J.
Plaintiff sued in solido the makers and indorsers of two instruments of the following tenor, to wit:
“$5,540.00. Independence, La., Aug. 25, 1916.
“On April 10th, 1917, after date for value received, promise to pay to the order of Farmers’ & Merchants’ Bank, five thousand five hundred and forty & no/100 dollars, payable to the Farmers’ & Merchants’ Bank, Independence, La., with interest thereon at the rate of eight per cent, per annum from maturity until paid with all costs of collection including ten per cent, attorney’s fees in case of collection by suit or through an attorney.
“Each of us, whether principal, security, grantor, or other party thereto, hereby severally waive protest, notice of protest and consent that time of payment may be extended without notice thereof and renounce each for himself and family any and all homestead or exemption rights, any or all exemption of daily, weekly, monthly or yearly wages or salary of each of us from the process of garnishment, either of us or the family of either of us may have under or by virtue of the Constitution or laws, state or federal, as against this debt or any renewal thereof. J. J. Terry.
“C. L. Buck.”
Upon the back of each appeared the following indorsements (the words on the second note being slightly transposed), to wit:
“To secure the within note or other liability to the bank I do hereby pledge to the Farmers’ & Merchants’ Bank or its assigns as collateral security for the payment of said note and other liabilities the following, viz.:
“1 mtge note of Aug. 26, 16, due April 10th, 1917, for $5,000.00.
“1 mtge note of June 10, 15 & due Nov. 1, 1916, for $6,500.00. J. J. Terry.
“<3. L. Buck.
“Robt. R. Reid.
“Ed. Geo. Davies.
“Farmers’ & Merchants’ Bank,
“Per O. W. Herring, Pres.”
While it would appear from the manner in which the notes and indorsements thereon are copied into the record that Reid and Davies were parties to the act of pledge, the record otherwise shows that those two individuals placed their names thereon only as indorsors, and really at the bottom of the back of the notes.
Ed. Geo. Davies being a nonresident, no personal service could he had as to him, and plaintiff reserved its right to sue at his domicile.
Judgment went by default as against Terry and Buck, and they have not appealed.
Defendant Reid answered, admitting all of the paragraphs of the petition except No. 9, which was merely for protest fees. He next set forth the collaterals mentioned on the back of the notes, and averred that plaintiff should apply to the payment of the principal notes all specially pledged securities before proceeding against the indorsers. The prayer was for a dismissal of the suit, and, in the alternative, for a stay of proceedings until the collaterals were exhausted, and for judgment against the makers for whatever amount might be recovered against defendant.
The case was submitted to the court below the first time June 19, 1917, on the pleadings, notes, collaterals, and protest papers which were filed in evidence by the plaintiff. Defendant Reid offered no evidence whatever, and the case was taken under advisement by the court. Afterwards, on July 9, 1917, and before the case had been decided, Reid filed a plea of division, setting up that he and Davies were accommodation indorsers and liable only as sureties. His prayer was for a division of liability as between himself and Davies. This plea was ordered filed and assigned for trial, apparently over the objection of plaintiff, was subsequently tried and sustained, and the ease reinstated on the trial docket. Having been submitted, both on the plea and on the merits, on March *537 11, 1918, judgment was rendered, holding the notes sued on nonnegotiahle, sustaining the plea of division, and in favor of plaintiff for one-half only of the amount claimed, with a stay of execution until the collaterals were exhausted. The item of protest fees was also rejected.
From, this judgment, plaintiff has appealed.
Opinion.
[1] We will dispose of the plea of discussion first, for, conceding for its purposes that the .principal notes were nonnegotiahle and defendant Reid’s liability that of a surety, the manner and time of urging it, in our opinion, precluded its consideration by either the district court or by ourselves. The plea was dilatory in its nature, and- therefore governed by articles 332 and 333 of the Code of Practice. Article 332 reads:
“Dilatory Exceptions'. Dilatory exceptions are such as do not tend to defeat the action, but only to retard its progress; declinatory exceptions have this effect, as well as the exception of discussion opposed by a third possessor, or hy a surety [italics ours] in an hypothecary action, or the exception taken to call in the warrantor.”
The next article requires “that they should be pleaded in limine litis, before issue joined, otherwise they shall not be admitted,” and plainly states that such exceptions shall not be allowed after judgment by default, nor shall they “be allowed in any answer in any cause.” See authorities cited under these articles in Garland’s Revised Code of Practice.
The plea of discussion therefore came too late.
Plea of Division.
The plea of division is based upon the contention that the notes sued upon are nonnegotiable, and, as a consequence, the liability of Reid and Davies is as .sureties, governed by the provisions of articles 3045 to 3049, inclusive, of the R. C. C., instead of that of indorsers of commercial paper, controlled by the Negotiable Instruments Daw and the general law merchant. It is argued that the clause in the memoranda of pledge on the back of the principal notes, binding the collaterals to the payment of “other liabilities” to the payee, destroys their negotiability; that the pledge obligates the makers to do something in addition to the payment of a sum of money, and makes the obligation of the indorsers more hazardous.
[2, 3] At this point, we digress from the question of negotiability for a moment to say that the contention of plaintiff’s counsel, made in brief and argument, that defendant Reid, in his answer, judicially admits the solidary nature of the obligation, so as to preclude himself from urging the plea of division, is not, in our opinion, well founded. In the first place, the petition and notes must be read together, and, when so read, the notes being annexed and made part thereof, control the pleading. We take it that this principle is so well recognized as to need no citation of authority. Reading the answer, we find that it, in effect, admits the execution, indorsement, and delivery of the notes in the manner and form alleged, but denies liability to the extent claimed by the plaintiff. Besides, the character of the liability is a question of law, and only on questions of fact, with few exceptions, can one estop himself by pleading. Rui. Gas. Daw, vol. 10, p. 673, tit., Estoppel, § 1, and authorities there cited.
[4, 5] Returning to the question of the negotiability of the notes which are the subject of this litigation, if they did not have the pledge memoranda on their backs, or, if the words “to secure other liabilities” were eliminated, it could hardly be contended that they were nonnegotiahle, as all other stipulations, both on their faces and in the act uf pledge, are expressly authorized by Act No. 64 of 1904, and supported by the law *539 haerchant. It will he noted that the objectionable language, unlike the Dresser Case, 132 La. 532, 61 South. 561, and the Rabito Case, 141 La. 970, 76 South. 166, forms no part of the face of the notes, but appears as a part of a distinct act of pledge which could easily have been made separately and independently therefrom. The same result, from a legal standpoint, could have been obtained had the makers attached the collaterals to the notes here and indorsed upon the other obligations the fact that such collaterals were pledged for the payment of those also.
Both the contracts of pledge and indorsement are essentially different in their natures and legal effects from the note proper, as well as from each other, and are governed in many respects by entirely different laws. The maker of a promissory note is bound primarily and unconditionally, while the obligation of the indorser is secondary and conditional. The former promises to pay a stated sum at all events on a fixed or determinable date, while the latter agrees that he will do so in event the maker does not, upon proper notice, at which time his obligation becomes fixed. The contract of pledge must follow certain well-recognized legal forms as to delivery and possession, etc., but otherwise may vary according to the whims of the contracting parties. The three contracts may be, and often are, made and affected by the laws of different states, though a part of the same undertaking.
Defendant Reid relies on the Dresser Case, supra, as holding specifically that the including of a stipulation in the face of a note, pledging collaterals to the payment of obligations other than the note itself, destroys its negotiability. As stated in the Rabito Case above referred to, the declaration in the opinion on rehearing in the Dresser Case that the note was nonnegotiable expressed the views, apparently, of the author of that opinion alone, as two members of the court, as then constituted, Breaux, C. X, and Provosty, X, dissented outright, while Monroe, X, concurred in the decree only, and Land, X, concurred for the reasons set out in the original opinion, that is, that Dresser had bound himself to pay the note at maturity the same as the maker. It is true the point at issue here, as to whether the language of the pledge binding collaterals for debts other than the note to which they were attached, was not involved in the Rabito Case, but the suggestions, in regard to the conclusions reached in the Dresser' Case are pertinent.
[6-8] The tendency of modern jurisprudence is to get away from the rigid rules of interpretation which seem to have prevailed when the famous expression of Chief Justice Gibson that “a negotiable bill or note is a courier without luggage” (Overton v. Tiler, 3 Pa. 346, 45 Am. Dec. 645) was coined. The law of negotiable instruments, as a part of the law merchant, is based upon the necessities, usages, and customs of business, and must develop with it. Where-ever the additional stipulations are merely in aid of the collection of the note, and do-not constitute an undertaking to give or do something else foreign to that end, they do not destroy negotiability. In the Rabito - Case, supra, it was held that a provision in a note dedicating to its payment any funds or other property in the hands of the payee at maturity, on default of the maker, did not rob it of negotiability. Why should the parties not provide for the "disposition of the excess of the proceeds of tangible property presently pledged, as well as for the application of unknown future sums or property to the discharge of a note? As well said by Mr. Justice Provosty in his dissenting opin-' ion in the Dresser Case, there could be no objection to a clause in negotiable paper which recognizes a prior pledge upon collaterals, provides for their use in discharging such prior obligations, and which pledges the remainder to the payment of the note presently executed.
*541 The determining principle underlying the whole matter is that the stipulations of pledge form no part of the essential elements of a promissory note. Unless such provisions (even though not transferable by the usual methods of negotiation) are so merged into those elements as to be inseparable therefrom, or controlling, or may not be ignored in passing the note to a third holder, they in no manner affect negotiability.' In other words, the promise to do or give an additional act or thing, which is reprobated by the law, must be a part of the primary obligation, which, being performed, discharges the contract at least pro tanto (to use a trite illustration, the payment of a sum and the giving of a horse) and not the secondary undertaking, such as stipulations of pledge, which provide merely a means of énforcing payment when the main obligation has failed.
“The fact that a writing in the form of a promissory note forms part of an instrument containing other conditions and stipulations does not destroy its character as a negotiable promissory note when the whole instrument indicates that the note was to be considered between the parties as an absolute payment to the payee of the amount stated. * * * The statement that collateral security has been given or deposited for the performance of the promise contained in the bill or note is a recital only, which does not affect its negotiability; and though the recital contain the terms of the deposit, that does not alter the case, for it renders neither the amount, the time of payment, the payee, nor the engagement to pay uncertain.” Daniel on Negot. Inst. (6th Ed.) vol. 1, p. 67, § 51a, and authorities cited.
In the case of Beckstrom v. Krone, 125 Ill. App. 376, cited under the above section, the Appellate Court of Illinois said:
“A recital in an instrument, in other respects like a promissory note, that it is secured by a lien or by a deposit of collaterals, does not destroy its negotiability, unless such recital qualifies the promise or makes it uncertain or conditional.
See, also, Mumford v. Tolman, 157 Ill. 258, 41 N. E. 617; Biegler v. Merchants’ Trust Co., 164 Ill. 197, 45 N. E. 512; First Nat. Bank v. Southworth, 215 Ill. 640, 74 N. E. 771.
The Supreme Court of Arkansas, in the case of Farmer v. First Nat. Bank of Malvern, 89 Ark. 132, 115 S. W. 1141, 131 Am. St. Rep. 79, had occasion to construe the following note:
“$1,000.
“On or before August the 1st, 1904,1 promise to pay to Jesse M. Grubbs, or order, the sum of one thousand dollars with ten per cent, interest from date until paid for value received of him. This note is given for borrowed money and is secured by a mortgage of this date on the following personal property, to wit [describing it]. The appraisement of property is waived in the face of said mortgage, and it includes any other indebtedness that may be due from the maker of tMs note to the said Jesse M. Grubbs [italics ours], and the undersigned agrees to have said property ■ insured in some good insurance company in the sum of $1,000 to protect the holder of this note. This 1st day of April, 1904. P. B. Farmer.”
Indorsed:
“Pay to the order of Hot Springs County Bank. J. M. Grubbs.”
The court, in the syllabus to that case, and which is borne out by the body of the opinion, said:
“A note made for the payment of a certain sum of money recited the fact of a mortgage as collateral, and a promise to have the property insured as an additional security. Held that the collateral contract did- not affect the principal obligation, except to aid in its fulfillment, and that the note was negotiable.”
The decisions of the other states cited in the text-books and digests seem to bear out the same conclusions.
The reasoning in this opinion thus far has been upon the theory that the assailed stipulation was written in the face of the notes, whereas, it appeared upon their backs. It was no part of the principal contract even in *543 a physical sense, and, as indicated elsewhere, might have been supported by different and stronger arguments in favor of the conclusions reached. However, all having been executed, in so far as the record discloses, at one and the same time and place, the provisions are construed together.
[9-11] Defendant argues that it would be unconscionable to allow plaintiff to compel him to pay the notes as indorser and then apply the pledged property to the payment of other debts of the makers; that under the law he would have the right to pay the debt and be subrogated to the rights of the plaintiff as against the pledge; and that he would not have indorsed the notes but for the belief that the pledge would be applied to their payment. The answer is that he bound himself with his eyes open, for the memoranda of pledge, in their entirety, we must assume, were before him when he indorsed the notes. The obligation of each indorser was to pay the notes on proper notice, if they were dishonored at maturity, with the option in the payee to sue whomsoever he saw fit for the full amount, with the right to have them paid only once, and with full protection to such indorsers, as between themselves, according to the nature of their agreement, or as provided by law. Section 66, Act 64, 1904; R. C. C. 2094. A similar option was enjoyed by the payee as to the pledged collaterals which secured the payment of the note, with the duty to surrender such collaterals on payment, unless otherwise waived or controlled by agreement. Now, in the absence of restrictions, all prior indorsers are liable to the one who pays, but if one of them has indorsed “without recourse,” subsequent holders acquire with full knowledge and cannot hold the indorser under restrictions. Why then could it not also be stipulated that the collateral should not respond to the claims of indorsers?
In support of the conclusions above announced, we quote the following from Colebrooke on Collateral Securities, p. 136, § 104;
“The negotiable promissory note or bill of exchange executed and delivered by the pledgor, upon securing an advance, as his own personal obligation in respect thereto, is the principal evidence of the indebtedness as compared -with the collateral notes indorsed to the pledgee to secure its payment. The promise of the maker to pay a certain sum at a certain time to a certain person therein named, or order, is not affected by the deposit of promissory notes of third parties as collateral security, and the pledgee is entitled to proceed by action upon default in the payment of the principal note at maturity, to enforce the personal liability of the pledgor irrespective of the fact that he holds the notes of other persons as collateral security. The pledgor is e'ntitled to a return of such collateral paper only upon the condition of first paying the moneys advanced, or making a due tender thereof to the pledgee. The only condition precedent to the right of action of the pledgee against the pledgor upon his personal obligation is the failure of the latter to pay his note at maturity. Upon such default, the right of action immediately accrues.”
Does it not reasonably follow that the indorser could have no greater rights with respect to the collaterals than the maker who owned and pledged them? See 4 Rob. 395, Walker v. Vaudry; 5 La. Ann. 219, Christine v. Chaney.
We, of course, express no opinion as to defendant’s rights upon the collaterals, as legal subrogee, had he paid the notes at maturity, or in event he should pay the judgment in this case.
[12] We conclude that the notes sued upon were negotiable, and the defendant Reid is liable as indorser for the full amount of the debt, without benefit of discussion or division.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, avoided, annulled, and reversed, and that plaintiff, Farmers’ & Merchants’ Bank, now have and recover judgment against the defendant Reid in solido for the full sum of '$11,080, with 8 per cent. *545 per annum interest from April 10, 1917, until paid, with 10 per cent, on the amount of principal and interest as attorney’s fees, and with recognition of its lien and privilege as pledgee upon the collaterals described on the back of the notes sued upon.