(108 So. 475)

No. 27457.

**ALEXANDRIA BANK & TRUST CO. v. HONEYCUTT et al.**

(March 29, 1926.  Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Alteration of instruments** ⚖═8—**Erasure of part of list of pledged stock from back of note is not an alteration of negotiable instrument discharging indorser (Act No. 64 of 1904, §§ 124, 125).**

   Act of pledge of stock, though on same paper as note, and incorporated in body thereof, is no part of note itself, and erasure of list of pledged stock from note is not an alteration of negotiable instrument under Act No. 64 of 1904, §§ 124, 125, discharging indorser.

2. **Alteration of instruments** ⚖═8—**Erasure of part of list of pledged stock from back of note under erroneous belief by holder as to his rights is not an alteration discharging indorser (Act No. 64 of 1904, § 123).**

   Under Act No. 64 of 1904, § 123, erasure of pledged stock on back of note under erroneous belief by holder that it had right to apply all securities attached to note to payment of other indebtedness of maker is not an alteration of note discharging indorser.

3. **Bills and notes** ⚖═256—**Indorser is not discharged by failure of holder to notify him of sale of stock pledged with note, but is discharged pro tanto to value of stock pledged.**

   Sale by holder of note of stock pledged by maker to secure note, without notifying indorser, does not discharge indorser, but entitles him to discharge pro tanto to the value of stock pledged.

4. **Pledges** ⚖═56(4)—**Pledgee, intending to sell pledged property, need not notify one who is not owner of pledged property.**

   Pledgee, intending to sell pledged property, is not required to notify or consult one who is not the owner of the thing pledged, especially where sale is made by direction of owner.

5. **Principal and surety** ⚖═115(1)—**Suretyship.**

   Giving surety of note credit by judgment for value of pledged stock sold discharges surety pro tanto.

   O'Niell, C. J., and Land, J., dissenting.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Action by the Alexandria Bank & Trust Company against J. W. Honeycutt and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

Thornton, Gist & Richey, of Alexandria, for appellant.

White, Holloman & White, of Alexandria, for appellee.

ST. PAUL, J.  The defendants J. W. Honeycutt and W. R. O'Neal indorsed a note of Canal Land & Live Stock Company, for $5,000, interest, and attorneys' fees in case of suit. The note was not paid, and there was judgment below against the indorsers for the full amount, subject, however, to a credit of $1,250, from which judgment Honeycutt alone appeals.

At the time the note was indorsed by the defendants, it was secured by pledge of 10 shares of the Home Investment Company, 20 shares of the Day Builders Supply Company,

and sundry other shares of stock of no value —all of which belonged to the said W. R. O'Neal.

Honeycutt's defense is that he was discharged as indorser: (1) Because plaintiff sold the 20 shares of Home Investment Company for $1,250 "without notifying Honeycutt, and applied the proceeds to other indebtedness of O'Neal at his (O'Neal's) request, without consulting Honeycutt"; and (2) by plaintiff's having *erased* from the list of pledged stocks on the back of the note (by canceling with red lines) the 20 shares of Home Investment stock (when it sold them), thereby *altering a negotiable instrument.* Act 64 of 1904, §§ 124, 125.

For convenience we pass upon these defenses in reverse order.

## I.

[1, 2] The second defense is not well founded: (a) Because the act of pledge, even though on the same paper as the note, and incorporated in the body thereof is no part of the note, or *negotiable instrument* itself, Farmers' & Merchants' Bank v. Davies, 80 So. 713, 144 La. 532; and (b) even if it were, it is admitted that the erasure (after the sale) "was due to an erroneous belief on the part of the bank that it had the right to apply all the securities attached to the note sued upon to the payment of other indebtedness of O'Neal [the owner of said stock]." Act 64 of 1904, § 123.

## II.

[3-5] The first defense is also not well founded: (a) Because we know of no law (or sound reason) requiring a pledgee to notify or consult one who is not the owner of the thing pledged as to his (the pledgee's) intention to sell the pledged property, particularly when the sale is made by direction of the owner; and it is not pretended that the stock was worth more than the amount for which it sold, to wit, the sum of $1,250, for

which the defendant was given credit in the judgment below; and (b) because the sale of the stock by the bank, and its consequent inability to subrogate defendant to its rights as pledgee thereof, discharges defendant (as surety) only *pro tanto*, i. e., to the amount by which he has been injured thereby, to wit, the value of said stock ($1,250). Succession of Pratt, 16 La. Ann. 357; Barrow v. Shields, 13 La. Ann. 57; Provan v. Percy, 11 La. Ann. 179; Gosserand v. Lacour, 8 La. Ann. 75; Saulet v. Trepagnier, 2 La. Ann. 428. And to give a surety *credit* by judgment is simply to discharge him *pro tanto.* [The credit is conceded by plaintiff].

## III.

The other pledged securities are on hand (in an envelope in the transcript) and have been judicially tendered to the defendants on due payment of the note. Hence appellant may have them on payment of this judgment.

### Decree.

The judgment appealed from is therefore affirmed.

LAND, J., dissents.

O'NIELL, C. J. (dissenting). When the holder of a promissory note sells the collaterals that are pledged to secure the payment of the note, and applies the proceeds of the sale to another debt of the maker of the note, without the consent or knowledge of an indorser of the note, he releases the indorser. And, when the holder of a promissory note, having so disposed of the collaterals pledged to secure its payment, erases the memorandum of the collaterals from the list on the back of the note, he materially alters and thereby avoids the instrument, according to section 124 of the Negotiable Instrument Law (Act 64 of 1904, p. 165).

It will not do to say that the stipulations with regard to the pledge of the collaterals, although incorporated in the body of the note,

are not a part of the instrument. The decision cited in the majority opinion (Farmers' & Merchants' Bank v. Davies et al., 80 So. 713, 144 La. 532), is not authority for that proposition. The decision was merely that the stipulations in the note, with regard to the pledge of the collaterals, did not affect the character of the note as a negotiable instrument, and in that sense were not a part of it.

Section 123 of the Negotiable Instrument Law, declaring that an unintentional cancellation of a negotiable instrument is inoperative, has no application to this case. The instrument sued on was not unintentionally canceled. It was materially altered, intentionally. If it was done in error, the error was not an error of fact, but an error of law —an error in failing to consider that the alteration of the instrument would release the indorser.

The decisions cited in the majority opinion, from the second to the sixteenth Louisiana Annual Reports were rendered long before the enactment of the Negotiable Instrument Law, without reference to the law merchant, but with regard to the law of suretyship in the Civil Code, and have no application to this case.