No. 1838
Second Circuit

MARTIN v. IVERSON; GAHAGAN, INTERVENOR AND THIRD OPPONENT

(December 11, 1926. Opinion and Decree.)
(January 28, 1927. Reversed on Rehearing.)

(*Syllabus by the Editor*)

1. Louisiana Digest—Estoppel—Par. 2.
An allegation that intervenor is entitled to prorate with plaintiff in the distribution of the proceeds of the sale of the property does not estop him from afterwards claiming to be paid out of the proceeds by preference over plaintiff because his second allegation did not cause plaintiff to change his position to his disadvantage.

2. Louisiana Digest—Bills and Notes—Par. 138.
The holder of a note orders it delivered to the maker, who delivers it to a third person, the holder making no notation that the note was paid; it will be considered a purchase of the note by the third person and not a payment and cancellation of the note.

(REVERSED ON REHEARING)

3. Louisiana Digest—Pleading—Par. 15.
A "motion to strike out" or "plea of estoppel" will be considered, although no affidavit is attached to it.

4. Louisiana Digest—Pleading—Par. 76, 80, 82.
The law being silent, a petitioner is allowed to amend his petition in any respect that the judge finds in the interest of justice, before appearance of his opponent.

5. Louisiana Digest—Estoppel—Par. 2.
An intervenor is not estopped from alleging in an amended petition additional facts not in conflict with his original petition, provided this be before issue joined.

6. Louisiana Digest—Evidence—Par. 58; Bills and Notes—Par. 219.
An intervenor who claims that he purchased a note carries the burden of proof that he did.

7. Louisiana Digest—Bills and Notes—Par. 182, 185, 238.
Where a note is paid by the drawer, although it is not marked "paid", and the drawer thereafter turns it over to a third party, it will be considered paid and not a purchase by the third

person from the holder, even though the drawer was given the money by the third person to pay it and turn it over to him.

8. Louisiana Digest—Bills and Notes— Par. 139, 141, 186.

The equitable rule that where the holder of notes secured by mortgage assigns one note of the series, he cannot come in competition with the assignee as to the proceeds of the sale of the mortgaged premises, has no application to a note which was paid and afterwards delivered to a third person, although it was not marked "paid".

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Red River. Hon. J. W. Jones, Jr., Judge.

Action by Thomas J. Martin against Quincy Iverson and W. W. Gahagan, intervenor, third opponent.

There was judgment for intervenor and plaintiff appealed.

Judgment affirmed and, on rehearing, reversed.

L. P. Stephens, Nettles & Bethard, of Coushatta, attorneys for plaintiff, appellant.

S. R. Thomas, of Coushatta, attorney for intervenor, appellee.

### STATEMENT OF THE CASE

REYNOLDS, J.   On December 14, 1917, J. O. Lofton, by act before B. F. Allums, a notary public of Bienville parish, sold to Quincy Iverson sixty acres of land situated in Red River parish for $950.00, the price being represented by four promissory notes signed by the purchaser, bearing even date with the act, each for the sum of $237.50, all bearing  8% interest from their date until paid, all drawn payable to the order of the vendor on October 1, 1918, October 1, 1919, October 1, 1920, and October 1, 1921,

respectively, all stipulating payments of 10% attorney's fes in case of being placed in the hands of an attorney for collection, and all paraphed "Ne Varietur" to identify them with the act of. sale which retained a vendor's privilege on the land to secure their payment.

All four notes were endorsed in blank by J. O. Lofton and transferred to plaintiff, Thomas J. Martin, before maturity and in due course of trade.

The first two maturing. of the notes were not paid at maturity by Qunicy Iverson and were acquired by intervenor and third opponent, W. W. Gahagan, through the firm of J. B. Martin & Company in exchange for his check for $494.00.

The two last maturing of the notes were not paid at their maturity either, and plaintiff brought suit against Iverson in the District Court of Red River parish on these two notes and also on another note signed by him for $53.00, dated February 3, 1920, drawn payable to the order of plaintiff on October 15, 1920, bearing 8% interest from December 5, 1919, and stipulating payment of 10% attorney's fees in case of suit for collection, which note, he alleged, was given to him by Quincy Iverson in part payment of the second maturing of the four purchase money notes.  He asked for recognition of his vendor's privilege on the property sold by Lofton to Iverson to secure the payment of the principal, interest and attorney's fees owing on the two notes for $237.50 each.

Iverson, though duly cited, interposed no defense, and judgment was rendered against him and in favor of plaintiff on January 25, 1922, for $528.00, the principal of the three notes, with 8% interest on $475.00 thereof from December 24, 1917, and 10% attorney's fees on the whole, and 8% interest on $53.00 thereof from Decem-

ber 5, 1919, and 10% attorney's fees on the whole.

The judgment recognized plaintiff's vendor's privilege on the property sold by Lofton to Iverson, to-wit: SE¼ of SW¼ and W½ of SW¼ of SE¼ of Section 25, Township 14 north, Range 5 west, in Red River parish, to secure the payment of the $475.00 and interest and attorney's fees thereon and the cost of suit.

Execution was issued on this judgment and under it the property was seized and advertised for sale by the sheriff.

Thereupon intervenor and third opponent, W. W. Gahagan, filed his petition of intervention and third opposition, in which he alleges that he was the owner and holder in due course of the two first maturing of the four purchase money notes, that they were unpaid, and that to secure the payment thereof he has a vendor's privilege on the property, which, he alleges, has been advertised for sale under plaintiff's judgment against Iverson. He further alleges that he has brought suit against Iverson on the two notes owned and held by him and that for the payment thereof he enjoys an equal privilege with plaintiff and that out of the proceeds of the sale of the property he is entitled to have the two notes held by him paid concurrently with the two held by plaintiff. He also alleges that as to that part of plaintiff's judgment against Iverson for $53.00, interest and attorney's fees, plaintiff has no privilege on the property and is not entitled to have that part of his judgment paid out of the proceeds of the sale until and unless the notes held by intervenor and third opponent have been first paid in full.

Intervenor and third opponent subsequently filed a supplemental petition in which he alleges that he acquired the two notes held by him from the plaintiff, Thomas J. Martin; that by reason thereof the plaintiff "has no right to compete with your petitioner, as transferee, in the proceeds of the mortgaged property, in the event there should not be enough to satisfy the claims above", and that he, intervenor and third opponent, is entitled to have the two notes held by him paid out of the proceeds of the sale of the property in preference to plaintiff's judgment.

Plaintiff moved to strike out the supplemental petition because it changed the issues presented by the original petition.

This motion was overruled.

Plaintiff filed an answer in which he denied that intervenor and third opponent acquired the two notes held by him in due course, and alleged that at the maturity of the two notes he, plaintiff, was the owner and holder thereof, and that thereafter the defendant, Quincy Iverson, paid the amount thereof, with the exception of $53.00, which he lacked to pay them, and for which amount he took the personal note of Iverson, payable October 1, 1919, and turned over to Iverson the two notes for $437.50 each as paid, and that these two notes, having been paid by Iverson, the debt represented thereby was satisfied and the vendor's privilege and mortgage securing their payment extinguished to that extent.

He denies that intervenor and third opponent acquired the notes from him and avers that they were paid by Quincy Iverson and turned over to him by plaintiff as paid.

He alleges that the note for $53.00 was given by Quincy Iverson in part payment of the two notes turned over to him by plaintiff and that it represented part of the purchase price of the property, and

that he is entitled to have his judgment therefor paid out of the proceeds of the sale of the property.

He denied that intervenor and third opponent has a privilege or mortgage on the property to secure the payment of the notes held by him and denies that he is entitled to have the same paid out of the proceeds of sale in preference to or concurrently with plaintiff's judgment.

Plaintiff filed supplemental answer, alleging that after the maturity of the two notes held by intervenor and third opponent, Quincy Iverson paid him the amount that was owing thereon, with the exception of $53.00, for which he took the personal note of Iverson, and that he delivered the notes to Iverson as paid, and that thereby the debt they represented was paid and the vendor's privilege and mortgage securing their payment extinguished to that extent.

Plaintiff also filed a plea of estoppel, in which he alleged that intervenor and third opponent, having alleged in his original petition that the notes held by him were of equal rank with those on which plaintiff's judgment was based and were entitled to be satisfied out of the proceeds of the sale of the property concurrently with plaintiff's judgment, he was estopped to assert that the privilege securing the payment of the notes held by him was superior in rank to plaintiff's judgment or that he was entitled to be paid out of the proceeds of sale in preference to plaintiff.

There was judgment in favor of intervenor and third opponent, W. W. Gahagan, and against plaintiff, Thomas J. Martin, recognizing intervenor and third opponent's privilege and mortgage on the property in controversy, and ordering that the notes held by him be paid out of the proceeds of sale of the property. in preference to plaintiff's judgment. From this judgment the plaintiff has appealed.

## OPINION

The defendant, Quincy Iverson, testified that he delivered the check of W. W. Gahagan to J. B. Martin & Co., and that he told Mr. Bryan Martin not to mark the notes "paid", because he had to deliver them to Gahagan.

Mr. Bryan Martin does not remember this.

However, we do not regard the statement as of importance, inasmuch as Bryan Martin did deliver the notes to Quincy Iverson without having marked them paid, and did receive from Iverson the check of Gahagan for $494.00, and collected the check.

The first question presented for decision is, did intervenor and third opponent's judicial allegation that he was entitled to prorate with plaintiff in the distribution of the proceeds of the sale of the property estop him to afterwards claim to be paid out of the proceeds by preference over plaintiff?

Intervenor and third opponent insists that this question cannot be considered for the reason that plaintiff's exception presenting it was not verified.

The view that we take of the question renders it unnecessary for us to pass on this phase of the exception.

Intervenor and third opponent's change of pleading did not cause plaintiff any damage or cause him to change his own position to his detriment.

In Irion vs. Knapp, 132 La. Ann. 60, 60 South. 719, the Supreme Court said:

"It is essential, to maintain the plea of estoppel, that the one pleading it should

have been put in a worse position by the act of the one against whom it is pleaded.".

It is clear that intervenor and third opponent's first judicial allegation did not cause plaintiff to change his position. Hence the second judicial allegation is entitled to be considered and passed on.

Intervenor and third opponent's mortgage and privilege retained in the act of sale passed before B. F. Allums, notary public, and recorded in Book Z of mortgages of Red River parish and filed in evidence, stood in the way of the funds being paid out before intervenor and third opponent's mortgage notes were cancelled, and there was no reason why he should not have his rights fully pasesd on as prayed for in his petition of intervention and third opposition.

The second and most important question to be decided is whether or not the plaintiff, by turning the notes over to Quincy Iverson without having marked them "paid" and receiving therefor the check of W. W. Gahagan for $494.00, had the effect of transferring them or of paying them.

Section 119 of the Negotiable Instruments Law provides:

"A negotiable instrument is discharged:
* * * *
"5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

The evidence shows that the notes held by W. W. Gahagan did not go into the hands of Quincy Iverson in his own right, for plaintiff received from W. W. Gahagan therefor a check for $494.00.

Hence, the notes passing into the hands of Quincy Iverson under the surrounding circumstances and not marked paid did not have the effect of discharging them.

Section 34 of the same act provides:

"An endorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

The two notes held by W. W. Gahagan were endorsed in blank and were delivered to him without being marked paid, and his check for $494.00 for same was turned over to nad endorsed and collected by T. J. Martin or his agent, J. B. Martin & Co.

There is no allegation of error on the part of plaintiff or fraud on the part of W. W. Gahagan, and plaintiff cannot be heard to question his ownership of the notes, especially since plaintiff received and collected W. W. Gahagan's check for $494.00 for the two notes.

City Savings Bank & Trust Co. vs. Goodman, 156 La. Ann. 106, 100 South. 66.

Quick vs. Littlejohn, 156 La. Ann. 369, 100 South. 531.

There appears on the last maturing of the two notes held by W. W. Gahagan indications that some memorandum has been endorsed on the back thereof and subsequently erased, and plaintiff insists that as to this note intervenor and third opponent holds subject to the memorandum, but the evidence makes it clear that T. J. Martin ordered it delivered to Quincy Iverson to be delivered by him to intervenor and third opponent.

T. J. Martin testified, page 4:

"Why, I got my son, Bryan, that is here, to look after it. I was leaving his house and I was looking for the negro up there —I don't know whether that week or within a few days at least, and I told him if the negro came, why he could receive the money and it would suit me all right; and the negro went and paid one note out and

he failed to figure in the interest of fifty-three ($53.00) dollars and some cents on the second note, and my son didn't let him have it; and the negro came in a few days to see me, and he plead so faithful for the notes, and I think he told me that Dr. Gahagan required him to bring that note in. I didn't know that the doctor was in it until then—and I finally told him that if he would give me a bank note and promise me faithfully that he would pay it next fall—first I told him that I could not and would not do it—and finally I told him, he kept on so persistent, that if he would give me that note and pay it the next fall, that I would give him an order for the other note, and he agreed to do it."

T. J. Martin received from W. W. Gahagan his check for $494.00, understanding that Quincy Iverson was compelled to deliver the notes to Gahagan, and cannot now be heard to claim any credits on the note, after having received from W. W. Gahagan the full amount thereof in principal and interest, excepting $53.00; and the judgment of the lower court only allowed W. W. Gahagan to be paid $475.00 by preference when, as a matter of fact, he gave his check for $494.00; so that W. W. Gahagan has received judgment for a smaller amount than he was entitled to, but he has not prayed for an amendment of the judgment.

Hence, the judgment of the lower court is correct and must be affirmed, and it is accordingly so ordered.

## ON REHEARING

WEBB, J.  A rehearing was granted in this cause on motion of the plaintiff, T. J. Martin, who contended that the court erred in its original opinion in refusing to sustain a plea of estoppel filed by him and in holding that the notes had been purchased by intervenor from Martin: conceding, however, that if the notes had been purchased by intervenor he would be entitled to payment out of the proceeds of

the mortgaged property by preference over plaintiff, Martin, which were the identical contentions made by the plaintiff on the original hearing and to which the original petition was confined.

Considering plaintiff's contentions and matters, pleading and evidence relevant thereto, in the order named:

### ESTOPPEL

In the original petition filed by intervenor he alleged that he was the holder and owner of two certain notes which were of a series of four drawn by Quincy Iverson, payable to the order of J. O. Loftin, and by the latter endorsed in blank, secured by vendor's lien and privilege and special mortgage on the property purchased by Iverson from Lofton, and that plaintiff, T. J. Martin, the holder of the other two notes, had brought suit against Iverson and obtained judgment against him with recognition of the privilege and mortgage, and had seized and was about to sell the mortgaged premises, and that intervenor, as the owner and holder of the notes, was entitled to share ratably with Martin in the proceeds of the sale, and prayed judgment accordingly.

Subsequently intervenor filed an amended petition, in which he alleged that the notes held by him had been purchased by him from Martin, plaintiff, and that intervenor was entitled to be paid the amount of his notes, principal, interest and attorney's fees, out of the proceeds of the sale of the mortgaged premises by preference over Martin, and amending his original prayer.

Martin, plaintiff, filed a motion to strike out the amended petition on the grounds that it came too late and changed the issues, which motion was overruled by the trial court, and in this court Martin, plain-

tiff, urges that the motion was, in effect, a plea of estoppel, and apparently intervenor concedes as much but contends that the plea should not have been and cannot be considered, as plaintiff did not annex an affidavit of the truth of the facts alleged.

Considering the plea either as a "motion to strike out" or as a plea of estoppel, the basis of either are facts which appeared in the pleading previously filed, and we do not think it was necessary for plaintiff to have made an affidavit of the facts shown · by the pleadings.

Now, considering the plea on its merits.

The amendment was filed prior to exceptions or answer by plaintiff, and we are of the opinion that it could not be stricken from the record on the ground that it came too late nor on the ground that it changed the issues.

The question of the right to amend a petition prior to the appearance of a defendant by way either of exception or answer appears to be left entirely at large, and since the law is silent upon · the subject we know of no reason why a plaintiff should not be allowed to amend in any respect that the judge finds the interest of justice may require, whether it be to supply a cause of action where none has been alleged in the original petition, or otherwise. The law intervenes only after issue is joined and declares that thenceforward an amendment may be made "with leave of the court", provided it does not alter the substance of the demand by making it different from the one originally brought.

Commercial Nat. Bk. vs. Smith, 150 La. 234, 90 South. 581.

On the motion as an estoppel, it is urged that the intervenor, having alleged that the notes held by him should be paid out of the proceeds of the property concurrently with the notes held by Martin, he was judicially estopped from claiming to the contrary.

From the facts alleged in the original petition the conclusion followed that the notes held by intervenor should be paid out of the proceeds of the sale concurrently with the notes · held by Martin, and from the facts alleged in the amended petition, it is conceded intervenor had the right to claim payment out of the proceeds by preference.

Intervenor in the amended petition did not allege any fact in conflict with the facts alleged in the original petition, and as one cannot usually be judicially estopped by his pleadings only as to matters of fact (Farmers & Merchants Bank vs. Dorie, 144 La. 532, 80 South. 713), we do not think the intervenor was estopped from alleging additional facts which did not conflict with the facts first alleged and from which an additional legal conclusion would flow; and, as we do not think there was any conflict between the facts alleged and the relief asked in the original petition and in the amended petition, the plea of estoppel cannot be sustained.

## MERITS

The intervenor claims that he purchased the notes from plaintiff and, hence, he seeks to take advantage of the quitable rule that where the holder of a claim secured by mortgage assigns a part of the claim he cannot come in competition with the assignee as to the proceeds of the sale of the mortgaged premises.

The facts shown by the record are as follows:

On December 24, 117, Quincy Iverson purchased from J. O. Loftin a tract of land

for the sum and price of nine hundred and fifty dollars, giving in payment four notes, dated with the act of sale, each for the sum of two hundred and thirty-seven and 50-100 dollars, payable to the order of J. O. Loftin, maturing on October 1, 1918, 1919, 1920, 1921, respectively, each bearing 8% per annum interest from date and secured by vendor's lien and privilege and special mortgage on the property purchased.

The notes were transferred by J. O. Loftin to T. J. Martin, Loftin endorsing them in blank, and some time in the latter part of the year 1919 Iverson procured from Martin a statement showing the amount (principal and interest) of the two notes which fell due October 1, 1918 and 1919, and later Iverson presented to T. J. Martin, through his agent, J. B. Martin, a check for four hundred and ninety-four dollars, drawn by intervenor, Gahagan, to the order of J. B. Martin & Co. (which we assume was a partnership composed of J. B. Martin and T. J. Martin) requesting that the two notes be given him and stating that intervenor, Gahagan, had requested that the notes should not be marked paid.

J. B. Martin found that the amount of the check was not equal to the amount of the principal and interest of the two notes maturing on October 1, 1918 and 1919, but he delivered to Iverson the first maturing note and credited the balance of the amount of the check on the note maturing October 1, 1919.

Iverson delivered the note which he had received from J. B. Martin to Gahagan, the intervenor, and subsequently Iverson called on T. J. Martin and told him that Gahagan required of him, Iverson, to bring in the note maturing on October 1, 1919, and prevailed upon T. J. Martin to accept Iverson's note for fifty-thre dollars, an amount which, together with the amount that had been credited on the note, maturing October 1, 1919, was equal to the amount (principal and interest) of the maturing note, and gave Iverson a letter in which he instructed his son, J. B. Martin, to mark the note maturing October 1, 1919, paid and to deliver it to Iverson.

Iverson then took the matter up with J. B. Martin, who erased the credit notation which had been placed on the note, and delivered the note to Iverson who, in a short time, delivered it to Gahagan, intervenor.

The parties do not claim there was any express agreement, and while intervenor states he intended to purchase the notes and that Iverson was acting as his agent, which is confirmed by Iverson, plaintiff states that he did not intend to sell the notes.

While it may be that the parties could have had other rights, in that there appears to have been a misunderstanding as to the nature of the transaction, they appear here, one contending that the notes were assigned, and the other that they were paid.

The notes were endorsed in blank and were assignable by delivery (Negotiable Instruments Act, Act 64 of 1904, Sec. 34); and had the notes been delivered without being marked paid to the intervenor in person, who was not in any manner bound on the notes, the presumption would have been that they were assigned and not paid.

However, they were not delivered to the intervenor in person, but to Iverson, the drawer, and conceding that Iverson, the drawer, was not precluded from acting as the agent of the intervenor, and that he did so act, we are of the opinion that the delivery to Iverson had the same effect as

it would have had if the delivery had been made to intervenor in person, provided plaintiff knew Iverson was the agent of intervenor and that the notes were de·livered to Iverson as such.

While there are several circumstances which might be said to indicate that plaintiff knew Iverson was acting as the agent of intervenor, such as the check having been drawn by the intervenor in favor of the partnership of which plaintiff was a member, rather than in favor of Iverson, and the fact of Iverson having informed plaintiff that intervenor had requested that the note should not be marked paid; but, on the other hand, the fact of plaintiff having directed his son and agent to mark one of the notes "paid" indicates that in whatever capacity Iverson appeared, plaintiff was securing payment of the notes.

The parties concede, however, that there had not been any personal correspondence or negotiations between intervenor and Martin relative to the notes, and, viewing the action of the parties as a whole, the situation presented is that of Iverson, the drawer of the notes held by plaintiff, presenting to him a check drawn by intervenor and a note drawn by Iverson, which together were of an aggregate amount equal to the amount of the notes (principal and interest) held by plaintiff, and of plaintiff's accepting same and delivering to Iverson the notes which had been held by plaintiff, which notes were subsequently delivered by Iverson to intervenor.

If the transaction should be considered solely with reference to the rights the intervenor could have against Iverson, conceding that Iverson was acting as the agent of intervenor, under the evidence as presented here, it could not be said that intervenor could equitably hold Iverson for the full face value of the notes, principal and interest, Iverson having already paid or given Martin his obligation for a part of the obligation, and that intervenor could not contend that plaintiff's privilege on·the mortgaged premises should be subordinated to a claim which could not be enforced, against the mortgagor.

The relationship of debtor and creditor which may have arisen as between Iverson and intervenor by virtue of the transaction, may be beside the question as to whether plaintiff dealt with Iverson as the agent of intervenor, but it cannot be irrelevant when considering whether or not Iverson was in fact acting as the agent of intervenor.

Conceding that Iverson could have acted as the agent of intervenor in purchasing Iverson's notes from the holder and owner, and that intervenor and Iverson understood that Iverson was so acting, yet it is difficult to maintain a distinct view of Iverson, the drawer of the notes, as the agent of the intervenor for the purchase of the notes, while Iverson is acquiring possession of the notes by giving to the holder funds of the intervenor and other obligations of Iverson, and considering merely the action of the parties, we think it would be impossible to conclude that Iverson purchased the notes for his principal rather than that he paid them for himself.

The intervenor carried the burden of proof to establish his alleged purchase (Weil vs. Enterprise Ginning Co., 42 La. Ann. 492, 7 South. 622), and although plaintiff testifies he did not intend to sell the notes, and his instructions to his son and agent to mark the note maturing in 1919 "paid" indicates that he did not intend to sell, yet, in view of the fact that plaintiff acquiesced in the act of his agent in delivering the notes wthout marking them paid, and of the testimony of the in-

5 LOUISIANA APPEAL REPORTS

tervenor that he intended to purchase the notes, and of Iverson that he was acting as the agent of intervenor, we would be disposed to give paramount importance to the fact of the notes having been delivered to Iverson without marking them paid, and to hold that plaintiff had sold or assigned the notes to intervenor; but when we consider that the action of the parties does not show a sale, in that Iverson paid a part of the amount of the notes, and plaintiff testifies that he did not intend to sell, we are of the opinion intervenor has failed to prove his alleged purchase, and that his demands should be rejected.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that intervenor's demands be rejected at his cost.