248 So.2d 73 (1971)
AMERICAN BANK & TRUST COMPANY
v.
William J. STRAUGHAN, Jr., et al.
No. 8296.
Court of Appeal of Louisiana, First Circuit.
April 19, 1971.
Rehearing Denied May 31, 1971.
*74 William H. Baker, of Holloway, Baker, Culpepper & Brunson, Jonesboro, for appellant.
Sidney D. Fazio, of McCollister, Belcher, McCleary & Fazio, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
This is a devolutive appeal taken by defendants cast in judgment in favor of plaintiff in a suit on promissory notes. The facts giving rise to this appeal are well summarized by the trial court in Written Reasons for Judgment, pertinent excerpts from which are reproduced below:
"The plaintiff, a banking corporation, has instituted this suit on the balance due on two promissory notes executed by William J. Straughan, Inc., the notes being in the principal amounts of $161,631.97 and $25,000.00, respectively. Further, the bank seeks recognition and judgment on certain described collateral allegedly securing the two notes just described. These are: An Act of Collateral Mortgage in the sum of $30,000.00 executed by William J. Straughan and Myra P. Straughan, defendants herein, covering real property in East Baton Rouge Parish; a Collateral Chattel Mortgage note in the amount of $10,000.00 covering certain motor vehicles and recorded in East Baton Rouge Parish; a *75 Collateral Chattel Mortgage in the sum of $50,000.00 executed by William J. Straughan, Inc. covering certain motor vehicles and equipment used in the defendant's business in East Baton Rouge Parish; the Assignment and Pledge of certain accounts receivable of William J. Straughan, Inc.; the Pledge of 99 shares of the capital stock of William J. Straughan, Inc., issued in the name of William J. Straughan; and the Continuing Guaranty of William J. Straughan.
"Essentially there is no serious dispute regarding the facts in this case. It appears that in May, 1967, defendant, William J. Straughan, as President of William J. Straughan, Inc. applied to the plaintiff for a line of credit in the amount of $150,000.00. He offered certain collateral in support of the line, namely, a mortgage on his office building; a second mortgage on his house; chattel mortgages on his trucks and equipment; assignment of accounts receivable and life insurance. The line of credit was approved by the bank and the collateral was delivered. In addition to the collateral on the application, Straughan also furnished his personal continuing guaranty and had delivered to the bank stock certificate Number 1 for 99 shares of stock of William J. Straughan, Inc.
"On October 31, 1968, the defendant executed the note sued on in the amount of $161,631.97. (P-1) On this note there is a space for the insertion of collateral pledged to secure the note. At the time of the execution of the note, the bank official preparing the note inserted only the following language: `Secured by List of A/R dtd 10-25-1968 Totaling 172,218.55.' Subsequently, on November 15, 1968, the defendant executed the second note sued on in the sum of $25,000.00. (P-2) This note was on the same form as the larger note and contained the same language in the space for collateral; however, this note was recited as being $25,000.00 in figures, but was for Twenty-five dollars in words.
"The defendant acknowledged his signature personally and on behalf of the corporation on each of the described notes and further admitted that the larger note represented a consolidation of smaller notes for money which the bank had actually loaned him and that he had received the sum of $25,000.00 upon execution of the second note dated November 15, 1968. Finally, the defendant does not dispute the credits claimed to have been applied to the notes by the bank, thereby admitting to the correctness of the balances due of $135,201.52 on the larger note and $21,135.66 on the smaller note.
"The plaintiff bank on the other hand acknowledges that prior to the filing of suit herein and after the execution of the notes, it added collateral on both notes by inserting language to cover the collateral mortgages on the real estate and the trucks and equipment, as well as the stock certificate of defendant corporation. There is a dispute between the parties as to whether the latter items were to be collateral; however, the Court, after considering the evidence introduced, believes that such was the intention of the parties at the time the original negotiations were held for the line of credit." (Written Reasons for Judgment, Record, pp. 27-29)
The first specification of error assigned by appellants involves the finding by the trial court that although there was a material alteration of the two notes sued on, nevertheless, this material alteration was authorized by the maker. The trial court held that the listing of additional collateral on the two notes by plaintiff constituted a material alteration of the instruments as provided by LSA-R.S. 7:124 and 7:125 of the Negotiable Instruments *76 Law,[1] but further held that the material alteration was authorized, thus precluding avoidance of the negotiable instrument as provided in the last clause of the first paragraph of LSA-R.S. 7:124.[2] This specification of error is without merit for the reason that we are satisfied that the alteration complained of does not constitute a material alteration of a negotiable instrument so as to render the negotiable instrument void.
It is clear that for the rule of avoidance on the ground of material alteration of an instrument as provided in Section 124 of the Negotiable Instruments Law to be applicable, the alteration must be material as provided in Section 125. Inasmuch as the alteration complained of does not fit within any of the five specified parts of Section 125, the alteration could be material only if it satisfied the language of the last provision of Section 125; that is, if it constitutes "any other change or addition which alters the effect of the instrument in any respect." (LSA-R.S. 7:125  Emphasis added)
It is clear that these sections of the Negotiable Instruments Law, because they give rise to avoidance of an instrument, are to be construed with reasonable strictness. Agricultural Credit Association v. Iaccuzzo, 167 La. 230, 119 So. 31 (1928). The alteration complained of does not alter the effect of the instrument in any respect. Instead, it merely lists additional collateral claimed by plaintiff to have been pledged to secure the principal obligations. Indeed, the notes sued on contain the following printed language:
"This note and any extension and renewal thereof and any and every debt, liability or obligation, direct or contingent, due or to become due, whether now existing or hereafter arising, by the undersigned, or any of them, to the said AMERICAN BANK & TRUST CO., up to the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00), are and shall be secured by the pledge of the securities or property listed and described as follows, vis: * * * and any substitution thereof or additions to the above collateral, and all other securities or property or credits that may be in transit to or from said bank by mail or carrier, or that may now or hereafter be held by or left in possession or under control of said bank for any purpose whatsoever by any of the parties hereto, whether said securities of property or credits are held by or under the control of the said bank alone, or with others, or by any other person or corporation for account of said bank, either solely or with others. All parties hereto severally consent and agree that the property herein pledged may be exchanged or surrendered from time to time without notice to, or assent from, any party hereto, and without in any manner releasing or altering their obligations hereunder." (Plaintiff Exhibit No. 1; Plaintiff Exhibit No. 2  Emphasis added) *77 From the foregoing it is clear that the makers of the note consented to the pledge of all property or credits in which the makers had any interest which were or might come in the possession of the bank as pledged to secure the obligations represented by the notes sued on.
In Alexandria Bank & Trust Company v. Honeycutt, 161 La. 261, 108 So. 475 (1926), the Supreme Court, relying on Farmers' & Merchants' Bank v. Davies, 144 La. 532, 80 So. 713 (1919), held that the act of pledge, even though on the same paper as the promissory note and incorporated in the body thereof, does not constitute part of the note, with the result that any alteration of the act of pledge would not constitute an alteration of the negotiable instrument itself prescribed by R.S. 7:124 and 7:125.
Moreover, because of the strict construction which should be placed on Sections 124 and 125 of the Negotiable Instruments Law, the alteration complained of, if it does not constitute one of the five specified forms of alterations or is not one which adds a place of payment where no place of payment is specified, must be an alteration which alters the effect of the instrument in any respect. Construing this provision, the courts have held that where an alteration does not alter the relative rights or positions of the parties to the instrument, it will not constitute the type of material alteration warranting avoidance of the obligation. For example, the Court in Palmer v. Presswood, 81 So.2d 116 (La.App.2nd Cir. 1955), held that the striking of the printed name of a bank from a printed form of note by drawing an ink line through such name did not constitute an alteration of the note, in the absence of proof reasonably leading to such conclusion and in view of uncontradicted testimony sufficiently convincing as to the regularity of the note and the validity of the indebtedness to the extent of the unpaid balance thereof. Similarly, in Dyer and Company v. Ferguson, 25 So.2d 92 (La.App. 2nd Cir. 1946), the appellate court held that where a note contained a promise to pay a corporation a specified amount as a compromise settlement and the maker admitted his signature and acknowledged the indebtedness in the specified amount, the alleged addition or retracing of the words and figures "Amount $110.00" in the upper left-hand corner of the instrument, the alleged retracing or addition of "Winn" in the name of Winnfield, the addition of the date, and the addition of words relating to payment of interest were not material alterations which would avoid the obligation to pay. The Louisiana Supreme Court in Martin v. McMasters, 14 La. 420 (1838) held that the words "without recourse" written at the end of the transfer of the note by the transferor, who obtains possession after transfer, do not alter the rights of the parties, and the Court will not notice them.
It is clear that when a debtor wishes to pledge written obligations of any kind to secure an indebtedness, the debtor perfects the pledge by delivery to the creditor of the obligations pledged to secure the indebtedness, and such pledge so made is valid and binding without further formality, Louisiana Civil Code Article 3158;[3] it is not necessary to the efficacy of a contract of pledge that it be in writing, Davis v. Davis, 50 So.2d 647 (La.App. 2nd Cir. 1951). *78 The addition to the notes of other credits claimed to be pledged to secure the obligations did not constitute material alterations of the instruments so as to warrant avoidance thereof, at least insofar as between the maker and the original payee of the instruments is concerned.
The second specification of error involves the refusal of the trial court to hold that the note shown as "$25,000.00" in numerical figures and "Twenty five Dollars" in words to be a promissory note only in the sum of $25.00. (Plaintiff Exhibit No. 2)
The trial court disposed of this contention in the following manner:
"Another defense offered by the defendants is that there is a discrepancy between the words and figures on the note sued upon in the amount of $25,000.00 and identified as Exhibit P-2, in that the figures recite the sum of `$25,000.00', whereas the words reflect the sum of `Twenty-five Dollars'. There is no doubt that the sum of $25,000.00 was actually received as Straughan himself acknowledged on the witness stand that this amount was deposited to his account by the bank. However, the defendants aver that under the provisions of LSA-R.S. 7:17, the words are controlling and the defendants[`] liability on the note should be limited to the sum of $25.00. The Court is satisfied that the case of Chase v. Central Homestead Association, 18 So.2d 56 (La.App. Orleans, 1944) cited by the plaintiff is applicable and controlling herein. In the Chase case, the Association had issued a share certificate to the plaintiff, which expressed in words that it was for five shares (or $500.00) and in figures that it was for two shares. The plaintiff claimed that under R.S. 7:17 the certificates should be considered as being for five shares. The Court held that as between the original parties that section had no application and that general contract law prevailed. It further held that parol evidence could be used to show the true figure and accordingly found that the certificate was for only two shares. In this case, it is obvious that the person preparing the instrument erred in writing Twenty-five instead of Twenty-five Thousand and as between the parties the note should not be avoided for this reason." (Written Reasons for Judgment, Record, pp. 30, 31)
The provision of the Negotiable Instruments Law relied upon by defendants, LSA-R.S. 7:17, provides a rule for construction when an instrument is ambiguous or in the case of omissions.[4] In this case the evidence is clear and the defendant corporation's president specifically admitted receiving from plaintiff the sum of $25,000.00 and not $25.00. There is no dispute herein requiring resort to any rule of construction, nor are the rights of any third persons involved. The trial court properly disposed of this contention, and this specification of error is likewise without merit.
Defendants assign as their third specification of error the trial court's holding that the notes payable to order of bearer need not be endorsed where they are pledged. The trial court held that the pledge of the notes was perfected by delivery, in accordance with Louisiana Civil Code Article 3158. Defendants contend *79 that the trial court erred in this respect, citing Fluker v. Bullard, 2 La.Ann. 338 (1847), for the proposition that the note pledged must be endorsed by the pledgor and must also be put into possession of the pledgee before there is a valid pledge of a note payable to order.
The case cited by defendants is distinguishable inasmuch as it involved the purported pledge of a note payable to order of the pledgor which was not endorsed by the pledgor nor put in the possession of the pledgee nor of a third person agreed on by the parties. The notes pledged to secure the principal obligations (Plaintiff Exhibit No. 4 and Plaintiff Exhibit No. 5) are not order paper but are instead bearer paper and were properly the subject of a pledge, which pledge was perfected by delivery and possession in the pledgee, Louisiana Civil Code Article 3158. This specification of error is accordingly, also, without merit.
Defendants assign as their last two specifications of error the holding by the trial court that there was a valid pledge of ninety-nine shares of defendant corporation stock represented by stock certificate number one, and the holding that there was a valid pledge of assignment of accounts receivable. The trial court disposed of these contentions in the following manner:
"The only other argument of the defendants which deserves comment regards the pledge of the Accounts Receivable and stock certificate. Straughan admitted executing and signing the written assignment of the accounts made pursuant to LSA-R.S. 9:3101, et seq.; however, as pointed out by counsel for the plaintiff, this statute provides an additional method of assignment to that of R.C.C. Arts. 3156 and 3158 established for the pledge of claims against third parties. Straughan also acknowledged delivery of the stock certificate. This delivery accompanied by possession is all that is needed. With no showing that a demand was made for the return of the stock certificate, the fallacy of this argument is apparent." (Written Reasons for Judgment, Record, p. 32.)
Defendants contend that the plaintiff does not have a valid pledge of the stock certificate for the reason that there was no proof of an intent to deliver the stock certificate to plaintiff as pledgee. The trial court made findings of fact to the contrary, concerning which we find no manifest error. Defendants also contend that the alleged assignment of accounts receivable did not comply with the applicable provisions of LSA-R.S. 9:3101-9:3110. The trial court likewise properly disposed of this contention by concluding that a proper written assignment was made, or at least the intent to make a pledge of the accounts receivable was proven, and that the pledge of accounts receivable could be perfected by the additional methods set forth in Louisiana Civil Code Articles 3156 and 3158. The method provided for assignment of accounts receivable in LSA-R.S. 9:3101-9:3110 is specifically provided by LSA-R.S. 9:3109 to be an additional method of assigning accounts receivable and does not have the effect of repealing any other provisions of law authorizing the assignment of accounts receivable or the methods therefor. These specifications of error are likewise without merit.
For the foregoing reasons, the judgment appealed from is affirmed, with all costs of this appeal assessed to defendants-appellants.
Affirmed.
NOTES
[1] These two sections read respectively:

"Section 124. Alterations, effect of
"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers.
"But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."
"Section 125. Materiality of alteration
"Any alteration which changes: (1) The date; (2) The sum payable, either for principal or interest; (3) The time or place of payment; (4) The number or the relations of the parties; (5) The medium or currency in which payment is to be made;
"Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is material alteration."
[2] See Footnote 1.
[3] The pertinent part of this Civil Code article as amended reads as follows:

"When a debtor wishes to pledge promissory notes, bills of exchange, bills of landing, stocks, bonds, policies of life insurance, or written obligations of any kind, he shall deliver to the creditor the notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or other written obligations, so pledged, and such pledge so made, except as hereinafter provided with regard to life insurance policies, shall without further formalities be valid as well against third persons as against the pledger thereof, if made in good faith, provided that where the pledge [is] of instruments not negotiable, the debtor must be notified thereof * * *."
[4] This section of the Negotiable Instruments Law reads in pertinent part as follows:

"Section 17. Construction when instrument ambiguous or in case of omissions
"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply:
"(1) Where the sum payable is expressed in words and also in figures and there is discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain, references may be had to the figures to fix the amount."