374 So.2d 741 (1979)
The PEOPLE'S BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
William Howard CAMPBELL et al., Defendants,
Howard Lumber Company, Inc., Intervenor-Appellant.
No. 7118.
Court of Appeal of Louisiana, Third Circuit.
August 23, 1979.
Writ Refused October 26, 1979.
*742 Watson, Murchison, Crews & Arthur, Ronald E. Cockern, Jr., Natchitoches, for defendant-appellant.
Kelly, Ware & Salim, Robert L. Salim, Natchitoches, for defendant-appellee.
Thomas & Dunahoe, G. F. Thomas, Jr., Whitehead & McCoy, James D. Kirk, Natchitoches, for plaintiff-appellee.
Before CULPEPPER, WATSON and FORET, JJ.
FORET, Judge.
This case involves ranking of privileges between a collateral mortgage and a materialman's lien. From a decision of the district court holding that the collateral mortgage outranked the materialman's lien, the materialman has perfected this appeal.
On March 31, 1978, William Howard Campbell and his wife, Alice Barnes Campbell, in anticipation of construction of a residence on a lot located in Section 3, Township 7 North, Range 8 West, Natchitoches Parish, Louisiana, executed a collateral-type mortgage to secure a note payable to the order of "Myself" for the sum of $28,000.00. The note dated the same as the mortgage was signed by the above parties, endorsed in blank, and duly paraphed for identification with the act of mortgage.
The note and mortgage papers were delivered to The People's Bank and Trust Company of Natchitoches, Louisiana on March 31, 1978. Arrangements had been made by the Campbells for future advances for the sums to be used in the proposed construction of a residence. Mr. Hertzog DeBlieux, Chairman of the Board of The People's Bank and Trust Company, testified he approved the loan to the Campbells, and his records reflect that the note and mortgage were received by the Bank on March 31, 1978.
The original mortgage was duly recorded in the mortgage records of Natchitoches Parish on April 3, 1978, at 12:09 P.M. Subsequently, either late in the afternoon of April 3, 1978, or on April 4, 1978, intervenor-appellant, Howard Lumber Company (Lumber Company), upon the order of Campbell, delivered certain building materials to the construction site.
The first disbursal by the Bank to the Campbells was on April 7, 1978, for the sum of $1,200.00. Subsequent disbursals were made to make a total sum advanced of $28,000.00. All of the actual advances made by the Bank to the Campbells are evidenced by "hand notes" payable to the Bank, secured by the mortgage[1].
The Campbells defaulted in payment of the hand notes to the Bank, and on October 17, 1978, the Bank instituted this foreclosure proceeding on the mortgage and ne varietur note pledged as security for the payment of the hand notes. Several interventions were filed for recognition of liens under the Private Works Act, among them that of appellant Lumber Company.
The trial court ruled in favor of the Bank, ranking the collateral mortgage ahead of the Lumber Company's materialman's lien. From this judgment, the Lumber Company brings this appeal.
The various types of mortgages in Louisiana were recently discussed by the Louisiana Supreme Court in First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978):
"[1] In addressing the issue presented, a brief review of the character of collateral mortgages will be helpful. A mortgage is an accessory right which is granted to the creditor over the property of another as security for the debt. La.Civ.Code arts. 3278, 3284. Mortgages are of three types: conventional, legal and judicial. La.Civ.Code art. 3286. Within the area of conventional mortgages, three different forms of mortgages are recognized by the Louisiana statutes and jurisprudence: an `ordinary mortgage' (La.Civ.Code arts. 3278, 8290); a mortgage to secure future *743 advances (La.Civ.Code arts. 3292, 3293); and a collateral mortgage. See Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628 (1972). Unlike the other two forms of conventional mortgages, a collateral mortgage is not a `pure' mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.
A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a `ne varietur' note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.
Up to this point, a collateral mortgage appears to be identical to both a mortgage to secure future advances and an ordinary mortgage. But a distinction arises in the collateral mortgage situation because money is not directly advanced on the note that is paraphed for identification with the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are pledged to secure a debt."
The Lumber Company claims its privilege under the Louisiana Private Works Act, specifically LSA-R.S. 9:4812, which, in pertinent part, provides that:
"When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear."
. . . . .
"The said privilege shall be superior to all other claims against the land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if the vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. The claim for wages of a laborer for work done by him on any building, shall, when properly presented and recorded by him in accordance with the provisions of this Sub-part, preserve in his favor a privilege on the land and improvements which will prime the right of mortgagees or vendors. As amended Acts 1966, No. 405, § 1."
Citing American Bank & Trust Company, Etc. v. F & W Construction Company, 357 So.2d 1226 (La.App. 2 Cir. 1978), writ refused, the Lumber Company agrees that the term "bona fide mortgage" as used in the above quoted statute insofar as the ranking of collateral mortgages is concerned, has reference to the date the collateral mortgage and note is pledged to the lender, assuming proper recordation.

*744 "[2] A collateral mortgage note may be pledged to secure future obligations. In that event full payment of a given obligation will not extinguish the collateral mortgage note and accompanying mortgage. (And in such cases the collateral mortgage will have a ranking from the initial pledge. La.Civil Code, art. 3158.)"

First Guaranty Bank v. Alford, supra, at 1302.
See also, New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (La.App. 4 Cir. 1972), writ refused, 262 La. 309, 263 So.2d 47 (1972), and Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App. 4 Cir. 1964), writ refused, 246 La. 868, 167 So.2d 677 (1964).
The legal issue that this Court is called upon to resolve is what constitutes a "pledge" of the mortgage and note to the Bank. The Bank contends that the mortgage and note were pledged on March 31, 1978 when they were delivered to the Bank and affect third parties from the date they were recorded (April 3, 1978, 12:09 P.M.). The Lumber Company's position is that the mere delivery of the mortgage and note to the Bank on March 31, 1978 was insufficient to constitute a "pledge"; they contend that such a pledge was not perfected until the first disbursement of funds to Campbell on April 7, 1978 (after the delivery of material). The Lumber Company contends that without any advance of funds, there is no indebtedness and since pledge is an accessory contract, it is only effective when there is a principal obligation which, it contends, is the repayment of funds lent.
Pledge is a contract, and it must be considered as such[2]. Mere delivery of the collateral mortgage and mortgage note to the Bank in itself may not be sufficient to constitute a contract. What is needed is a "meeting of the minds" that the delivery of the mortgage and note is intended as a pledge to secure a loan, present or future. In order for such a delivery to constitute a pledge, it must be accompanied by an agreement to stand as security for repayment of a debt, either presently existing or contemplated to be made in the future.[3]
Article 3158 of the Louisiana Civil Code specifically provides for a pledge to secure future advances:
"... it is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, ..."
We find from the facts (as did the trial court) that the March 31, 1978 delivery to the Bank of the mortgage and note by the Campbells constituted a pledge of the mortgage and note to the Bank to secure future indebtedness and as such, should be given ranking so as to affect third parties from the subsequent recordation on April 3, 1978, at 12:09 P.M. Thus, the trial judge correctly ranked the Bank's collateral mortgage ahead of the Lumber Company's materialman's lien, and the judgment of the district court is affirmed.
All costs are assessed to intervenor-appellant, Howard Lumber Company.
AFFIRMED.
NOTES
[1] Although the mortgage and note were designated as "collateral mortgage" and "collateral note", the instruments have the elements and characteristics, as discussed further below, of a mortgage to secure future advances. The latter type mortgages are usually called "collateral mortgages" rather than "a mortgage to secure future advances".
[2] Civil Code Article 3133:

Art. 3133. Pledge, definition
Art. 3133. The pledge is a contract by which one debtor gives something to his creditor as a security for his debt.
[3] The collateral mortgage involved in this case states that the collateral mortgage note is "not given or issued in evidence of any specific debt, but are intended and shall be used as collateral to secure payment of any indebtedness now existing or hereafter to arise on the part of the mortgagor, to secure which the within described note may at any time be pledged to present or any future holder". This provision in the mortgage tends to show the intent of the parties that the collateral mortgage note be pledged to secure future indebtedness.