426 So.2d 392 (1983)
R.B. MARDIS & Mrs. Stella Mardis, Plaintiffs-Appellees, and
Tallulah Production Credit Association, Plaintiff-in-Intervention, Appellant,
v.
Thomas I. HOLLANGER, Jr. & Janet Hollanger, Defendants-Appellees, and
Bank of Morehouse, Defendant-in-Intervention, Appellee.
No. 15167-CA.
Court of Appeal of Louisiana, Second Circuit.
January 17, 1983.
Writ Denied March 25, 1983.
*393 Voelker, Ragland, Brackin & Crigler by William B. Ragland, Jr., Lake Providence, for plaintiff-in-intervention, appellant.
Rankin, Yeldell, Herring & Katz by Stephen J. Katz, Bastrop, for defendant-in-intervention, appellee.
Farrar, Perry & Jefferson by Harvey Perry, Monroe, for defendants-appellees.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
JASPER E. JONES, Judge.
Tallulah Production Credit Association (PCA) appeals an adverse judgment in a rule to rank mortgages ancillary to this executory proceeding to enforce a first mortgage on property in Morehouse Parish, Louisiana. The rule was tried and judgment was rendered recognizing the mortgage held by the Bank of Morehouse as a second mortgage and the mortgage held by PCA as a third mortgage. We affirm.

The Facts
This case arises from the business dealings of Thomas Hollanger. Hollanger and several relatives, individually and through corporations, were engaged in extensive farming operations in north Louisiana and south Arkansas.
In early 1978 Hollanger and Hollanger and Bracewell Rice Farms, Inc., a corporation owned one-half by Mr. and Mrs. Hollanger and one-half by Hollanger's brother-in-law and his wife, were negotiating with Farmer's and Merchant's Bank (FMB) of Stuttgart, Arkansas, to arrange a crop loan. FMB required security before the loan could be made.
The Hollangers purchased a large tract of land in Morehouse Parish from Mr. and Mrs. R.B. Mardis on February 3, 1978. Part of the price was given in the form of a note for $598,078 which was secured by a mortgage on the Mardis tract. This mortgage is acknowledged to be the first mortgage on the land.
Also on February 3, 1978, the Hollangers executed and endorsed a $300,000 demand *394 note payable to "Ourselves." This note is also secured by a collateral mortgage on the Mardis tract. This mortgage was recorded on February 3, 1978, shortly after the mortgage securing the Mardis note. We will hereinafter refer to the $300,000 demand note as the "mortgage note."
On February 4, 1978, Hollanger delivered the mortgage note and a certified copy of the collateral mortgage to FMB. This note was given to secure both individual and corporate loans then existing or to be advanced in the future. That day Hollanger acting for the corporation borrowed from FMB $45,000 represented by a note payable on or before February 20, 1978.
On March 1, 1978, Hollanger, acting individually and for the corporation executed a note, payable to FMB, in the amount of $450,000. This note represented the crop loan and the consolidation of the existing corporation loan of February 4, 1977.
On April 24, 1978, the Hollangers transferred the Mardis tract to Hollanger and Bracewell Rice Farms, Inc. On December 4, 1978, Hollanger, individually and for the corporation, executed a note in the amount of $540,000 payable to FMB. This note was a renewal of the March 1 note.
Hollanger and Bracewell Rice Farms, Inc., through its president, Thomas Hollanger, executed and endorsed a demand note in the amount of $1,500,000 on April 16, 1979. This note was secured by a collateral mortgage covering the Mardis tract executed that day. Hollanger, as corporate representative, also executed a written agreement pledging the $1,500,000 note to PCA to secure existing and future loans.
In late 1979 or early 1980 intra-family friction developed over the business operations. A division of assets was arranged and the Hollangers emerged with total ownership of Hollanger and Bracewell Rice Farms, Inc.[1]
Following the corporate changes, Hollanger was unable to meet his and the corporation's obligations to FMB. FMB then refused to renew the December 4, 1978, note. Hollanger arranged alternate financing through the Bank of Morehouse which agreed to buy Hollanger's loan from FMB.
On February 22, 1980, Hollanger and his attorney, Harvey Perry, went to Stuttgart. Hollanger, acting for the corporation, executed a note for $304,187.50 representing the balance remaining on the December 4, 1978, note.
Perry and a vice-president of FMB executed a trust agreement under which Perry was made an "escrow agent" for the delivery of certain items, including the note for $304,187.50, and the mortgage note to the Bank of Morehouse.
Perry took the items to Bastrop, Louisiana, and delivered them to the Bank of Morehouse which electronically transferred payment of the price to FMB.
On March 23, 1980, Hollanger, acting for the corporation, executed a note in the amount of $300,000 payable to the Bank of Morehouse. This note represented a renewal of the February 22, 1980, note purchased from FMB.
Mr. and Mrs. Mardis commenced this executory proceeding to enforce their mortgage on May 2, 1980.
PCA filed this rule on May 5, 1982, contending that its mortgage is second only to the mortgage held by the vendor's and superior to the mortgage the Bank of Morehouse holds which it obtained from FMB. After the rule was tried the district judge rendered the judgment complained of and PCA appealed.
PCA sets out four assignments of error. It contends that the trial judge erred in finding that:
1) the collateral mortgage note was pledged to FMB;
2) the collateral mortgage note was pledged to secure the FMB hand note executed on February 22, 1980, and the collateral mortgage retained its rank after the hand note was transferred by FMB to the Bank of Morehouse;

*395 3) no reissue or repledge of the collateral mortgage note was required after the hand note was acquired by the Bank of Morehouse; and
4) no novation of the debt occurred when the new hand note was issued on March 23, 1980 to the Bank of Morehouse.

Assignment # 1
Through this assignment of error appellant contends that the mortgage note was never pledged because of the failure of the parties to comply with the requirements of C.C. art. 3158 as stated in New Orleans Silversmiths v. Toups, 261 So.2d 252 (La. App. 4th Cir.1972), writ refused, 262 La. 309, 263 So.2d 47 (1972).
In Toups the court listed four requirements for retrospective ranking under LSA-C.C. art. 3158:
1) a valid initial pledge;
2) each succeeding loan specifically secured by the pledge;
3) agreement at the time of the original pledge that it would secure existing and future obligations; and
4) the pledged instrument must remain in the hands of the pledgee.
Appellant first contends that there was no valid pledge and, therefore, the first requirement is lacking.
The only formality required for the pledge of a negotiable note is delivery. American Bank & Trust Company v. Straughn, 248 So.2d 73 (La.App. 1st Cir. 1971), writ denied, 259 La. 746, 252 So.2d 450 (1971); Baker Bank & Trust Company v. Behrnes, 217 So.2d 461 (La.App. 1st Cir. 1968); Acadiana Bank v. Foreman, 343 So.2d 1138 (La.App. 3d Cir.1977); affirmed, 352 So.2d 674 (La.1977). However, for there to be a pledge the formality of delivery must be coupled with an agreement that the note stands as security for existing or future debts. People's Bank & Trust Co. v. Campbell, 374 So.2d 741 (La.App. 3d Cir. 1979), writ refused, 376 So.2d 1268 (La. 1979).
The mortgage note and a certified copy of the collateral mortgage were delivered to FMB on February 4, 1978, by Hollanger. Thus, the formality of delivery is present. Appellant strenuously argues that there is no pledge because there was no agreement to pledge. This argument is not founded upon the evidence.
At the trial of the rule Thomas Hollanger testified as follows:
Q. I believe you basically testified, Mr. Hollanger, the reason this collateral mortgage dated February 3, 1978, was prepared was a requirement of the Farmers and Merchants Bank?
A. That's true.
Q. And as I understand your testimony, they stated they would have to have a mortgage on your farm, the Mardis Tract, before they would loan you money for your crop loan, is that correct?
A. Correct.
Q. When you tookuh did you take that collateral mortgage note to the Farmers and Merchants Bank on February 4, 1978?
A. Yes.
Q. And from that time until today has that collateral mortgage note gotten into your hands?
A. No.
Q. Who did you pledge that note for?
A. Myself and the corporation.
Q. Was that crop loan that you received as a result of pledging that note was it ever paid off?
A. No.
Q. The balance ... was the balance the lowest balance was that which the Bank of Morehouse purchased, is that correct?
A. That's correct.
Q. During that period of time, was that mortgage note ... did that mortgage note remain in the hands of the Farmers and Merchants Bank as security for that loan?
A. It did.
Q. Was thatuh note to secure any other advances by the Farmers and Merchants Bank?
A. Any future advances or past money I had borrowed. [Rec. 583-4.]
*396 The FMB official Hollanger dealt with was deceased at the time of trial. Mr. Carl Gunner, executive vice-president of FMB, testified at trial.
Gunner testified that he was familiar with the lending practices of FMB and that loans of the amount involved here would not have been made without a mortgage on immovable property as security. He further testified that the only reason FMB would have had the mortgage note was as security for the various hand notes.
The testimony of Hollanger and Gunner shows that it was the parties' intent and agreement that the mortgage note, and through it the collateral mortgage, secure both existing and future loans. There was a valid initial pledge and the first requirement of Toups is met.[2]
Appellant also argues that the second requirement of Toups is lacking because the succeeding hand notes were not secured by a pledge of the mortgage note.
With respect to the mortgage note the collateral mortgage provides: "The note may be issued and pledged by MORTGAGOR... to secure loans and advances made or to be made..." The record shows that the Hollangers and FMB had agreed that the pledge of the mortgage note would secure both existing and future personal and corporate debts.
When the pledge agreement specifically provides that the pledge is to secure existing and future debts the second requirement of Toups is met. Tallulah Production Credit Ass'n v. Turner, 391 So.2d 885 (La. App. 2d Cir.1980), writ refused, 396 So.2d 900 (La.1981). As the agreement between the Hollangers and FMB provides that the pledge is to secure both existing and future debts the second requirement of Toups is met.[3]
This assignment of error is without merit.

Assignment # 3
Through this assignment of error appellant contends that the fourth requirement of Toups, that the pledged instrument remain continuously in the hands of the pledgee, is lacking. Appellant bases this contention on the fact that the mortgage note was transferred to the Bank of Morehouse when it purchased the February 22, 1980, note from FMB. Appellant concludes that this transfer required a repledge of the mortgage note and that the collateral mortgage can rank only from the date it was repledged.
The thing the Bank of Morehouse bought from FMB was a debt represented by the February 22, 1980 note. That note was secured by a pledge of the mortgage note and through it by the collateral mortgage.
The pledge is an accessory of the primary obligation. LSA-C.C. art. 1771;[4]Franklin v. Bridges Loan & Inv. Co., Inc., *397 supra. The sale of an obligation includes its accessories. LSA-C.C. art. 2645.[5]
The transfer of a hand note also transfers the collateral mortgage note pledged to secure it. In re Elliott, 385 F.Supp. 1194 (M.D.La.1974); Smith v. Shippers' Oil Co., 120 La. 640, 45 So. 533 (1908); Richey v. Venture Oil & Gas Corp., 346 So.2d 875 (La.App. 4th Cir.1977).
In Smith, the supreme court stated the rule that a pledgee cannot sell the thing pledged except to satisfy the debt for which it was pledged. However, the court also recognized that the pledgee could sell the note representing the primary debt and transfer the pledged securities to the purchaser as security for the sold note.
Appellant seems to obliquely contend that the pledge was extinguished because the mortgage note was returned to the pledgor. However, the facts do not bear out this assertion.
The mortgage note was never in the physical possession of the pledgee after February 4, 1978. It was given to Mr. Perry by FMB only after he executed a trust agreement providing that he was an escrow agent for the delivery of this note and other documents to the Bank of Morehouse. Under these circumstances the note was never even in the constructive possession of Hollanger.
The fourth requirement of Toups was fulfilled.[6] This assignment of error is without merit.

Assignment # 2
Through this assignment of error PCA contends that the mortgage note was not validly pledged until February 22, 1980, and therefore, the collateral mortgage is outranked by its mortgage which ranks from April 16, 1979.
A collateral mortgage ranks from the date the mortgage note is pledged. Wallace v. Fidelity National Bank, 219 So.2d 342 (La.App. 1st Cir.1969), writ refused, 253 La. 1083, 221 So.2d 517 (1969); Installment Plan, Inc. v. Justice, 209 So.2d 68 (La.App. 4th Cir.1968); Rex Finance Company v. Cary, 145 So.2d 672 (La.App. 4th Cir.1962), affirmed, 244 La. 675, 154 So.2d 360 (1963); First Guaranty Bank v. Alford, supra.
The merit of this assignment depends on the date on which the mortgage note was pledged. If it was prior to April 16, 1979, this assignment is without merit.
For the reasons previously discussed with respect to Assignments 1 and 3 the mortgage note was pledged on February 4, 1978, and the collateral mortgage ranks from that date. This assignment is without merit.

Assignment # 4
Through this assignment appellant contends that a novation occurred when the March 23, 1980, note was executed to replace the February 22, 1980, note and that, therefore, a repledge of the security was required.
The linchpin of this contention is whether a novation occurred.
Novation requires the specific intent to do so and cannot be presumed. LSA-C.C. art. 2190;[7]Acadiana Bank v. Foreman, supra; Sterlington Bank v. Terzia Lumber & Hardware, Inc., 146 So.2d 233 (La.App. 2d Cir.1962). The intent to novate the debt must clearly result from the agreement or acts of the parties. Sterlington Bank.
*398 There is no indication in the record that the parties desired or intended to effect a novation. Instead it appears that all they desired to do was to issue a new note representing the amount owed on the existing debt. The new note in the amount of $300,000 reflects that the balance of the debt had been slightly reduced by a partial payment.
Taking a new note in partial renewal of an old one upon which a payment is made does not operate as a novation, or extinguishment, of the original debt or the pledge securing it. Davis v. Welch, 128 La. 785, 55 So. 372 (1911); Smith, Howard & McCoy, Inc. v. Acme General Con. Inc., 152 So.2d 596 (La.App. 2d Cir.1963), writ refused, 244 La. 663, 153 So.2d 881 (1963); Beasley v. Martin, 253 So.2d 801 (La.App. 2d Cir.1971).
This assignment of error is without merit.
For the foregoing reasons the judgment is affirmed at appellant's costs.
NOTES
[1] The corporate name was subsequently changed to Hollanger Rice Farms, Inc.
[2] Appellant's reliance on Franklin v. Bridges Loan & Inv. Co., Inc., 371 So.2d 294 (La.App. 2d Cir.1979), for the proposition that there was no pledge is misplaced. There no debt ever came into being and the court held that because of the accessorial nature of pledge there could be no pledge when there was never a debt for it to secure. In this case a debt was created on the day of the pledge and a debt has constantly been in existence since that time.
[3] Durham v. First Guaranty Bank of Hammond, 331 So.2d 563 (La.App. 1st Cir.1976), writ refused, 334 So.2d 431 (La.1976), and First Guaranty Bank v. Alford, 366 So.2d 1299 (La. 1978), relied on by appellant are inapposite.

In Durham, the hand note and collateral mortgage note contained no reference to each other and the debtor denied any intent to secure the hand note with the mortgage note. Here, though some of the hand notes do not refer to the mortgage note, the debtor testified that the mortgage note was intended to secure those notes.
In Alford, it was held that a pledged note secured no notes other than the single note designated in the pledge agreement. In the instant case it was agreed that the mortgage note would secure both existing and future debts not only one note as in Alford.
[4] LSA-C.C. art. 1771:

A principal contract is one entered into by both parties, on their own accounts, or in the several qualities they assume. An accessory contract is made for assuring the performance of a prior contract, either by the same parties or by others; such as a suretyship, mortgage and pledge.
[5] LSA-C.C. art. 2645:

The sale or transfer of a credit includes every thing which is an accessory to the same; as suretyship, privileges and mortgages.
[6] We also note that the third requirement of Toups is met as the parties had agreed at the time of the original pledge that it would secure existing and future debts.
[7] LSA-C.C. art. 2190:

Novation can be made only by persons capable of contracting it; it is not presumed; as the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt.