449 So.2d 1099 (1984)
NEW ORLEANS FEDERAL SAVINGS AND LOAN ASSOCIATION
v.
Harry LEE, Sheriff and Ex-officio Tax Collector for the Parish of Jefferson and A. Mason Barnes, III.
No. 83-CA-666.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1984.
Rehearing Denied May 17, 1984.
*1100 David C. Loeb, Metairie, for Northshore Development, Inc., defendant in reconvention.
Santo A. Dileo, New Orleans, for A. Mason Barnes, III, defendant-plaintiff in reconvention-appellant.
J.B. Kiefer, Metairie, for New Orleans Federal Sav. & Loan Ass'n, plaintiff-appellee.
Gerald Arceneaux, Westwego, for Harry Lee, defendant-appellee.
Before BOUTALL, GRISBAUM and DUFRESNE, JJ.
BOUTALL, Judge.
This appeal arises from a controversy between the pledgee of a collateral mortgage and the holder of a judicial mortgage over the sheriff's sale of real estate. From a judgment declaring the sheriff's sale of the property a nullity and granting a permanent injunction to the plaintiff, the defendant appeals. We reverse.
The parties before this court are as follows: New Orleans Federal Savings & Loan Association (as plaintiff substituted for Northshore Development, Inc.), pledgee of a collateral mortgage and collateral mortgage note secured by real estate in *1101 Jefferson Parish owned by Southern Investors Property Management; Harry Lee, Sheriff and Ex-Officio Tax Collector for Jefferson Parish, defendant; A. Mason Barnes, III, defendant and plaintiff in reconvention, holder of a judicial mortgage duly recorded against the property; and Northshore Development, Inc., the original plaintiff made defendant in reconvention, a close-held corporation owned by the same principals as those of Southern Investors Property Management, Inc.
A detailed recital of the facts is necessary to an understanding of the case. The dispute arose originally over the failure of the parties to execute an agreement between Southern Investors Property Management ("Southern") and A. Mason Barnes, III ("Barnes") for a purchase-exchange of certain lots in the Kenner Project Subdivision. When Barnes sued Southern for specific performance ("A. Mason Barnes, III v. Southern Investors Property Management, Inc.", 24th J.D.C. 242-942), which was denied, he was awarded judgment of $6,000 for fill he had placed on the Southern lots in anticipation of the exchange.[1] That judgment was recorded on May 11, 1981. Barnes initiated execution by fieri facias in July, 1981 against fourteen lots owned by Southern, and the property was adjudicated to Barnes as highest bidder at a sheriff's sale on March 3, 1982[2] for $56,000, an amount deemed sufficient to pay all superior mortgages. Gulf South had informed the Sheriff's office that its collateral mortgage appearing on the mortgage certificate had been paid.
The case before us was filed on March 5, 1982 by Northshore Development, Inc. ("Northshore"), against Harry Lee, the Sheriff of Jefferson Parish, and Barnes seeking to nullify the sale and applying for a preliminary injunction and temporary restraining order. The restraining order was granted that day. Shortly thereafter New Orleans Federal Savings and Loan Association ("New Orleans Federal") was substituted as plaintiff by amended petition. Five days later, Barnes filed an answer and exceptions and reconvened against Northshore, seeking to dissolve the temporary restraining order and praying for damages and attorney's fees for its wrongful issuance. The trial court granted a permanent injunction on March 24, 1982 following a hearing on the rule. Upon appeal, the Fifth Circuit reversed and remanded for a trial of the merits.[3] Trial was held on April 27, 1983 and May 20, 1983. On June 8, 1983 the trial court signed a decree ordering a permanent injunction against the Sheriff and Barnes, declaring the sheriff's sale a nullity, dismissing the exceptions and reconventional demand of Barnes against Northshore at Barnes' cost, and assessing all costs of the proceedings against Barnes. Barnes appealed.
The issues before this court are whether the collateral mortgage held by New Orleans Federal primed Barnes' judicial mortgage and whether the trial court incorrectly denied damages, attorney's fees, and costs to Barnes for wrongful issuance of the temporary restraining order.
The pertinent transactions regarding the mortgages are as follows:
August 9, 1979 Collateral mortgage for $150,000 by Southern to Gulf South Bank ("Gulf South") on property owned by Southern; mortgage note payable to "Bearer" pledged to Gulf South same day.
February 5, 1980 Hand note for $100,000 payable to Gulf South executed by Southern and identified with pledge agreement of August 9, 1979.
May 11, 1981 Judgment against Southern in "A Mason Barnes, III vs. Southern Investors Property Management, Inc., 24th J.D.C. 242-942" recorded.

*1102 May 20, 1981 (recorded May 27, 1981) $300,000 construction loan by New Orleans Federal to Southern with mortgage on other lots owned by Southern.
May 20, 1981 Balance on Southern's loan at Gulf South paid by check of attorney for New Orleans Federal's collateral pledge agreement and hand note for $100,000 stamped "Paid," surrendered at homestead's request to president of Southern who later delivered to attorney for homestead.
The primary issue before us is whether the collateral mortgage of New Orleans Federal ranked from the date of its first issuance, or from the date of New Orleans Federal's loan to Southern and payment of its balance on the earlier hand note.
The appellant's position is that the collateral mortgage was reissued on May 20, 1981, having been cancelled by payment of the hand note. Without an underlying debt, the mortgage that is accessory to it fails. The transaction between New Orleans Federal and Gulf South was payment only. Gulf South did not transfer or assign its rights either orally or in writing to New Orleans Federal but simply marked the hand note and collateral pledge agreement "paid." The transaction between New Orleans Federal and Southern was a loan to Southern for construction and to pay out the debt to Gulf South. Accordingly, the judicial mortgage of May 11, 1981 primed the mortgage of May 20, 1981.
The appellee homestead argues that the collateral mortgage note was viable on May 20, 1981, and its lien attached as of August 9, 1979, priming the judicial mortgage. It was repledged on May 20, having been purchased by and transferred to the homestead.
The trial judge gave oral reasons from the bench for determining that the homestead prevailed, as follows:
"... The reason why is because the collateral mortgage was recorded prior to the judicial mortgage that [Barnes] had..., and that this Court finds that there was a basis in fact for the debt to support the collateral mortgage."
He stated further that the collateral mortgage recorded in August, 1979 had not lost its efficacy.
A collateral mortgage is a special form of conventional mortgage. A clear explanation of its character is set out in First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978), as follows, at 1302:
"... unlike the other two forms of conventional mortgages, a collateral mortgage is not a `pure' mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.
"A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a `ne varietur' note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.
"Up to this point, a collateral mortgage appears to be identical to both a mortgage to secure future advances and an ordinary mortgage. But a distinction arises in the collateral mortgage situation because money is not directly advanced on the note that is paraphed for identification with the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are pledged to secure a debt."
LSA-C.C. art. 3158, Formalities and contents of pledge; requirements for pledge of promissory notes and other written obligations, provides for the retrospective ranking of collateral mortgages, as follows, in pertinent part:
"... it is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to *1103 secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them; ...." [Emphasis supplied.]
Under a different fact situation from ours, the Supreme Court in First Guaranty Bank v. Alford, supra, acknowledged that a collateral mortgage note may be repledged and retain its ranking from the first pledge even though a debt evidenced by a hand note has been paid. This principle had been applied earlier in New Orleans Silversmiths v. Toups, 261 So.2d 252 (La.App. 4th Cir.1972), writ denied 263 So.2d 47 (La.1972). The First Guaranty Bank holding was followed in People's Bank & Trust Co. v. Campbell, 374 So.2d 741 (La.App. 3rd Cir.1979), writ refused 376 So.2d 1268 (La.1979), and American Bank v. Red Diamond Supply Co., Inc., 402 So.2d 729 (La.App. 4th Cir.1981). In those cases, the collateral mortgage note had remained in the hands of the pledgee.
Recent cases have held that, where certain formalities are observed, the retrospective ranking provided by article 3158 applies to a transferee of the original pledgee. The transferee retains the rights and ranking of the pledgee under the principles set out in LSA-C.C. art. 2645 and in LSA-R.S. 10-3:202 in the statutes on commercial paper. Article 2645 provided that:
"The sale or transfer of a credit includes everything which is accessory to the same; as suretyship, privileges, and mortgages."
LSA-R.S. 10:3-202(1) states that:
"Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery."
In Mardis v. Hollanger, 426 So.2d 392 (La.App. 2nd Cir.1983), writ denied 430 So.2d 93 (La.1983), a bank purchased a collateral mortgage loan from another bank by the following procedure: The first pledgee bank had the mortgagor execute a new hand note for the balance outstanding on his hand note. The bank and mortgagor's attorney executed a trust agreement making the attorney the "escrow agent" for the delivery of the mortgage package to the purchasing bank. The agent then delivered the new hand note and collateral mortgage note to the purchasing bank which then electronically transferred payment to the original pledgee. In Richey v. Venture Oil & Gas Corp., 346 So.2d 875 (La.App. 4th Cir.1977), a bank transferred, sold and assigned a hand note for $300,000 secured by pledge of a $1,000,000 collateral mortgage note and mortgage of an oil lease. The hand note and collateral mortgage note were negotiated "without recourse" to a second pledgee. In both Richey and Mardis v. Hollanger, supra, the courts held that the collateral mortgage dated from its first issuance and primed all subsequent liens. In the recent case of Texas Bank of Beaumont v. Bozorg, 444 So.2d 698 (La.App. 5th Cir.1984) this court *1104 followed Mardis v. Hollanger, supra, and held that the purchaser of notes retained the original pledgees' ranking of two collateral mortgages, where the hand notes, bearer paper, were not marked "paid" and there were written assignments of the hand notes, collateral mortgages, and collateral mortgage notes, all of which were delivered to the purchaser.
In summary, by the plain wording of article 3158, the collateral mortgage retains its initial ranking only when the pledged collateral mortgage note remains in the hands of the pledgee. According to current jurisprudence, once it leaves that pledgee's hands, a subsequent pledge of the collateral mortgage note will not maintain its rank unless the mortgage note and hand note are validly negotiated or assigned to the new pledgee.
An examination of New Orleans Federal's loan agreement indicates the following provisions: A "mortgage" of $300,000 states interest at 18% with twelve monthly installments, the entire balance of principal and interest to be paid on June 1, 1982. It lists as security thirteen lots in Kenner Project Subdivision. The mortgage is signed by Hilbert Loeb ("Loeb") for Southern. A "mortgage note" contains the same interest and payment provisions and is marked "Ne Varietur" and identified with the act of mortgage. Attached are two addenda: one signed by Loeb binding himself personally on the debt and the other reading as follows:
"Secured by the pledge on that certain collateral mortgage dated August 8, 1979, executed by Southern Investors Property Management, Inc. in the principal sum of $150,000.00 and filed of record in MOB 773 folio 938 Jefferson Parish.
 SOUTHERN INVESTORS PROPERTY
 MANAGEMENT, INC.
 By: S/ HILBERT S. LOEB
 HILBERT S. LOEB
 May 20, 1981"
The check from Ray W. Talley ("Talley"), attorney for New Orleans Federal, on his "loan closing account" is in the amount of $114,578.98. The comment on its face reads:
"Payoff of loan by Southern Investors Property Management, Inc., secured by $150,000.00 collateral mortgage."
As to the Gulf South documents, the hand note payable to the bank and dated February 5, 1980, is stamped "Paid May 20, 1981." The reverse side contains a signed notation that it is secured by the collateral pledge agreement, along with two renewals. The collateral pledge agreement is also stamped paid in the same manner and the acknowledgement of receipt of all collateral is dated 5/20/81 and initialed by Loeb.
Mr. Talley admitted in testimony that no negotiation of the hand note from Gulf South to New Orleans Federal appears on the back of the note, nor is there a written assignment by Gulf South to the homestead. The homestead's motive in paying the note and having the collateral mortgage note pledged was to gain additional security for its loan. Talley called the bank and requested the pay out figure. After Loeb signed all the papers he gave the check for $114,578.98 to Loeb to take to the bank. A bank employee called to ask whether she could surrender the note to Loeb. Talley told her she had his permission as Loeb was his agent. Loeb returned it to him and he in turn forwarded it to the homestead for the mortgage file. On the face of the pledge agreement are the words, "H. Loeb as per telephone instruction from Mr. Talley, Atty." Nothing in Talley's testimony or in that of Loeb or in the documents introduced into evidence provides a basis for the homestead's claim that it purchased the note or that it was transferred to it.
While it is true that bearer paper is transferable by mere delivery, which Talley and Loeb testify happened in the case of the collateral mortgage note, that transfer did not serve to retain the ranking under article 3158. The mortgage note was validly repledged to secure the new *1105 hand note of March 20, 1981, but the note representing the indebtedness had clearly been paid, not transferred. The pledge of the collateral mortgage note for $150,000 had been cancelled. Without a valid transfer, assignment, or sale of Gulf South's rights to New Orleans Federal, the homestead could not receive the retrospective ranking of Gulf South.
As the record fails to reveal any valid transfer of the handnote from Gulf South to New Orleans Federal in the case before us, we hold that the conditions necessary for retrospective ranking under LSA-C.C. 3158 have not been met. Therefore, the collateral mortgage lost its ranking with payment of Southern's indebtedness, and the transaction of May 20, 1981 was a reissuance of the collateral mortgage note. Accordingly, Barnes' judicial mortgage of May 11, 1981 primed the collateral mortgage, and the judgment in favor of New Orleans Federal is reversed.
As to Barnes' reconventional demand against Northshore Development, Inc., the appellant urges that the trial judge erred in failing to award him legal interest on the amount he paid to the sheriff in connection with the sale to March 3, 1982 and additional costs resulting from the delay.
The verified petition of Northshore, the original plaintiff, was filed by David Loeb, attorney for Northshore and a shareholder in the family corporation. Hilbert Loeb testified that if the collateral mortgage had been pledged to or purchased by Northshore he and the other shareholders would have known. However, he said David Loeb was not active in the business and might not have known; further, he, Hilbert Loeb, was out of town when David Loeb filed the petition. We find Loeb's testimony fails to explain Northshore's filing the petition when it clearly had no standing to do so. La.C.C.P. 3608 allows damages and attorney's fees for wrongful issuance of a temporary restraining order. We hold that the judgment dismissing Barnes' reconventional demand should be reversed, as the TRO was improper. However, because the petition was amended five days later to substitute the proper plaintiff, who adopted Northshore's pleadings and prayers and continued the temporary restraining order in effect, it is not possible for us to make a precise determination as to the amount of damage caused by Northshore's improper issuance. It would appear that the basic damages due by Northshore would be attorney's fees for opposing the temporary restraining order.
Damages for wrongful issuance of the injunctions would also be due from New Orleans Federal in interest and attorney's fees. Although we could fix the interest due from the record before us, we are unable to determine attorney's fees with any degree of accuracy. As noted above, we are unable to set the damages due from Northshore for wrongful issuance of the temporary restraining order. We remand to fix damages against the plaintiff, New Orleans Federal, and the defendant in reconvention, Northshore.
Accordingly, the judgment appealed from is reversed, and it is ordered that:
1) There be judgment in favor of the defendant, A. Mason Barnes, III and against the plaintiff, New Orleans Federal Savings & Loan Association, dissolving the injunction permanently restraining, enjoining, and prohibiting Harry Lee, Sheriff and Ex-officio Tax Collector of the Parish of Jefferson, and A. Mason Barnes, III, their agents, and employees, attorneys, and all persons, firms, or corporations acting or claiming to act in their behalf, or in concert with them, or either of them from seizing, alienating, selling, transferring, conveying or encumbering in any way whatsoever the property subject to the sheriff's auction of March 3, 1981.
2) That the sale of property subject to the sheriff's auction of March 3, 1981, and cancelled by judgment of June 8, 1983, be reinstated and A. Mason Barnes, III be declared the owner of said property, more particularly described as follows:
LOTS 8-10 and LOTS 13-23, SQUARE 91, Kenner Project Subdivision, Section *1106 No. 4, Kenner, Parish of Jefferson, Louisiana.
3) That there be judgment in favor of plaintiff in reconvention, A. Mason Barnes, III, and against defendant in reconvention, Northshore Development, Inc. and in favor of defendant, A. Mason Barnes, III, and against plaintiff, New Orleans Federal Savings and Loan Association, for damages from wrongful issuance of the temporary restraining order and injunctions; and that the case be remanded to fix said damages.
4) That all costs of these proceedings be assessed against New Orleans Federal Savings and Loan Association.
REVERSED AND REMANDED.
NOTES
[1] Judgment affirmed, Barnes v. Southern Investors Prop. Mgmt., 423 So.2d 1196 (La.App. 5th Cir.1982).
[2] In the interim an attempt by Southern to enjoin the sale had been denied on jurisdictional grounds, remanded on appeal, and on remand denied again on January 18, 1982.
[3] New Orleans Federal Sav. & Loan Ass'n v. Lee, 425 So.2d 947 (La.App. 5th Cir.1983).