540 So.2d 371 (1989)
Wayne THOMPSON
v.
H & S PACKING COMPANY, INC.
87 CA 1542.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Johnny Moore, Ossie Brown, Baton Rouge, for plaintiff-appellee Wayne Thompson.
Phil E. Miley, Baton Rouge, for defendant-appellant H & S Packing Co., Inc.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
This appeal arises out of a suit on a promissory note.

FACTS
On August 20, 1986, Wayne Thompson filed suit against H & S Packing Company, Inc. (H & S), alleging that he was a holder in due course of a promissory note, dated May 8, 1981, in the principal sum of $130,000.00.
The dispute among the parties arises from the following facts. J.L. NeSmith and H. David Hughes were stockholders in H & S. Thereafter, Hughes sold his interest in the corporation to the corporation. Pursuant to this transaction, H & S, through its president NeSmith, executed an installment promissory note, dated May 8, 1981, payable to the order of H. David Hughes. The note was payable in the principal sum of $130,000.00, provided annual interest of twelve percent, and specified payment as follows:
In equal monthly installments, including principal and interest, in the amount of One Thousand, Eight Hundred Sixty-five & 13/100 ($1,865.13) Dollars each, the first due and payable on or before the 8th day of June, 1981, and a like installment due and payable on or before the 8th day of each succeeding month thereafter until all have been paid, with the maker having the right to prepay all or part of this note at any time without penalty.
H & S made monthly payments to Hughes through November 8, 1983.
*372 On or about August 9, 1982, Hughes endorsed the aforementioned note to Wayne Thompson with the following language:
Note assigned to Wayne Thompson August 9, 1982 to secure loans
 /s/ H. David Hughes
Thompson never received any payments on the note.
After trial, the trial court rendered judgment in favor of Thompson and against H & S for $110,000.00, together with 12% interest from November 8, 1983, until paid. The trial court also awarded Thompson a sum equal to 10% of the principal and interest, as provided in the note, as reasonable attorney's fees and cast H & S for all costs. From this adverse judgment, H & S appeals, assigning the following errors:
1. The trial court erred in holding that Thompson was a holder in due course.
2. The trial court erred in fixing the amount due under the promissory note sued upon at $110,000.00.

ASSIGNMENT OF ERROR NO. 1
The first issue is whether Thompson sustained his burden of proving his status as a holder in due course.
LSA-R.S. 10:3-302(1) defines a holder in due course as:
[1] [a] holder who takes the instrument
(a) for value; and
(b) in good faith; and
(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
The status of a holder in due course is significant to the extent that, as such, he takes the instrument free from all claims to it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt, with minor exceptions. LSA-R.S. 10:3-305.
In order for one to enjoy the status of a holder in due course, the four elements of LSA-R.S. 10:3-302(1) must exist simultaneously during possession of the negotiable instrument. LSA-R.S. 10:3-307(3) and the corresponding comments to the article indicate that the person claiming the rights of a holder in due course must sustain his burden by affirmative proof of all elements. Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058 (La.App. 1st Cir.1983).

HOLDER
In Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., supra, this court set forth the requirements of a holder as follows:
Any person who asserts rights of a holder in due course must first prove that he is a "holder". A holder is a person who is in possession of ... an instrument ... drawn, issued, or endorsed to him or to his order or to bearer or in blank. La.R.S. 10:1-201.
Negotiation is the process by which the transferee of an instrument becomes a holder. La.R.S. 10:3-202(1). The comments to that article in the UCC indicate that negotiation is a special form of transfer, the importance of which lies in the fact that it makes the transferee a holder. Stated another way, an endorsement by a holder of an instrument payable to order is necessary for a negotiation of the instrument, for only by a negotiation may a third party become a holder of the instrument. "Developments in the Law, 1980-1981: Banking Law," 42 LLR 330 (1982). (footnote omitted) [435 So.2d at 1061].
LSA-R.S. 10:3-202 provides as follows:
(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery.
(2) An endorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.
(3) An endorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it *373 purports to be of less it operates only as a partial assignment.
(4) Words of assignment, condition, waiver, guaranty, limitation or disclaimer of liability and the like accompanying an endorsement do not affect its character as an endorsement.
The comments to this article indicate that subsection (4) is intended to reject decisions holding that the addition of such words as "I hereby assign all my right, title and interest in the within note" prevents the signature from operating as an endorsement. Such words, according to the comments, usually are added by laymen out of an excess of caution and a desire to indicate formally that the instrument is conveyed, rather than with any intent to limit the effect of the signature.
In the instant case, the note was delivered to Thompson with the following endorsement:
Note assigned to Wayne Thompson August 9, 1982 to secure loans
 /s/ H. David Hughes
Clearly, under the provisions regarding negotiable instruments, the aforementioned endorsement by Hughes transferred the note to Thompson. As such, Thompson became a holder.
H & S contends that the aforementioned endorsement was an attempt by Hughes to assign or pledge the note to Thompson. H & S reasons that the note, however, was never pledged because of the failure of the parties to comply with the formalities of LSA-C.C. art. 3158.[1]
*374 Generally, the only formality required for the pledge of a negotiable note is delivery. Mardis v. Hollanger, 426 So. 2d 392 (La.App. 2nd Cir.1983), writ denied, 430 So.2d 93 (La.1983); Acadiana Bank v. Foreman, 343 So.2d 1138 (La.App. 3rd Cir. 1977), affirmed, 352 So.2d 674 (La.1977); American Bank & Trust Company v. Straughan, 248 So.2d 73 (La.App. 1st Cir. 1971), writ denied, 259 La. 746, 252 So.2d 450 (La.1971); Baker Bank & Trust Company v. Behrnes, 217 So.2d 461 (La.App. 1st Cir.1968). However, for there to be a pledge the formality of delivery must be coupled with an agreement that the note stands as security for existing or future debts. Mardis v. Hollanger, supra; People's Bank & Trust Company v. Campbell, 374 So.2d 741 (La.App. 3rd Cir.1979), writ denied, 376 So.2d 1268 (La.1979). But see Louisiana National Bank of Baton Rouge v. O'Brien, 439 So.2d 552 (La. App. 1st Cir.1983), writ denied, 443 So.2d 590 (La.1983), which deals with the pledge of non-negotiable instrument.
In the instant case, the promissory note was endorsed by Hughes and delivered to Thompson on or about August 9, 1982. Thus, the formality of delivery is present. Further, at trial, Thompson testified as follows:
Q. Now, why did Dr. Hughes endorse and deliver this note to you?
A. David and I have known each other for a long time. I have loaned David several sums of money. David has lent me money. And I had loaned ordinarily more, quite a large sum of money, and David had to give mehe wanted to secure my loan.
Q. Mr. Thompson, I show you this document which refers to Oppenheimer Money Market Fund, Inc. and seems to be made pay to the order of H. David Hughes, dated May 21, 1981, and signed by you. What is that?
A. Ten thousand dollar check.
Q. What was it?
A. All of them?
Q. To Dr. Hughes?
A. To Dr. David Hughes.
Q. I show you another. This one is one of the same nature for Fifteen Thousand Dollars dated June 26, 1981.
A. Same thing.
Q. Does that represent a loan to Dr. Hughes?
A. That is part of the loan.
Q. And I now show you a check signed by Grace Kovarik, and I would pause and ask you who is Grace Kovarik?
A. Grace was my wife.
Q. That is your wife.
A. Yes, my wife.
Q. Payable to H. David Hughes, dated 6/24/82 in the sum of five thousand dollars. What is that?
A. A five thousand dollar loan. It states on there.
Q. I show you another check to H. David Hughesno, this one is to you and I ask you what is the significance of this check?
A. The ten thousand dollar one? It would be a loan to David Hughes.
Q. I notice it is payable to you but it endorsed by you on the back
A. I.M.W. Serices (sic).
Q. over to I.M.W. Services. What was that?
A. That was a loan to David Hughes.
MR. CAVANAUGH: Your Honor, in connection with the witness' testimony, I would like, to offer, file and introduce in evidence these four documents as Exhibit P-2 and reserve the right to substitute copies.
THE COURT: All right, so ordered.
BY MR. CAVANAUGH:
*375 Q. With respect to these loans that you made to Dr. Hughes, Mr. Thompson, has Dr. Hughes repaid you?
A. No, sir.
On cross-examination, Thompson testified that, although there was no written agreement between he and Hughes, the note was delivered to him by Hughes for the express purpose of securing loans. Thompson testified as follows:
Q. Was the delivery of this promissory note to you intended to secure the loans that you had made which your attorney has introduced checks on?
A. Sure.
Q. It was those specific loans that he intended to secure?
A. He owed me a great deal of money and this was to secure those loans. Was that your question?
Q. Yes, sir. In August of 1982 or at any other time other than the statement typed on the back of the note, was there any other writing between yourself and Dr. Hughes regarding this promissory note?
A. Not that I know of. Do you see anything written on there?
Q. I mean, is there any other agreement
A. Are you asking me did he give
Q. Yes.
A. No, sir.
Q. So there is no other agreement or nothing in writing between you and Dr. Hughes concerning this promissory note except what was added to the back of the note?
A. Do you know something I don't know? I don't know nothing about no writing.
No other testimony or evidence was introduced to refute Thompson's testimony that the note was endorsed and delivered to him by Hughes to secure existing and future loans. Hughes did not testify.
Even assuming arguendo, that Hughes, in endorsing the note in the manner he did, intended to pledge the instrument, we find that the formalities of LSA-C.C. art. 3158 for negotiable instruments were met. Under either analysis, Thompson established that he is a holder of the instrument.

VALUE
LSA-R.S. 10:1-201 defines "value" as follows:
Except as otherwise provided with respect to negotiable instruments and bank collections, a person gives "value" for rights if he acquires them.
(a) in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection; or
(b) as security for or in total or partial satisfaction of a pre-existing claim; or
(c) by accepting delivery pursuant to a pre-existing contract for purchase; or
(d) generally, in return for any consideration sufficient to support a simple contract.
Although H & S does not assert that Thompson did not take the instrument for value, the facts of the case affirmatively show that at the time Hughes endorsed the note, he owed Thompson several thousand dollars. Therefore, we find that the trial judge correctly determined that Thompson took the note for value.

GOOD FAITH
Good faith is defined as honesty in fact in the conduct or transaction concerned. LSA-R.S. 10:1-201. Good faith is determined on a reasonableness standard, in that the facts must be such as would necessarily put a reasonable person on inquiry to ascertain the true facts. Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., supra; Commercial National Bank in Shreveport v. Calk, 207 So.2d 578 (La.App. 3rd Cir.1968).
In the instant case, the trial judge found that Thompson was in good faith when he took the note. In fact, the trial judge, in his reasons for judgment, stated that "[t]here has been no showing that Mr. *376 Thompson was not in good faith at all times." We agree.

WITHOUT NOTICE OF CLAIMS OR DEFENSES
LSA-R.S. 10:1-201 provides that:
A person has "notice" of a fact when
(a) he has actual knowledge of it; or
(b) he had received notice or notification of it; or
(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.
H & S alleged no particular facts to prove that Thompson knew or should have known that a claim or defense existed. Thompson's uncontroverted testimony established that he took the note without notice of any claim or defense.
In the instant case, the trial court held, and we agree, that Thompson established that he took the instrument as a holder, in good faith and for value, without notice of any claim to it and that, as such, he is a holder in due course.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, H & S contends that the trial court erred in fixing the balance due on the promissory note at $110,000.00. H & S reasons that H & S entered into an agreement with Hughes on March 1, 1984, wherein Hughes agreed to accept $65,000.00 as full payment for the balance due on the note.[2]
LSA-R.S. 10:3-305 provides:
To the extent that a holder is a holder in due course he takes the instrument free from
(1) all claims to it on the party of any person; and
(2) all defenses of any party to the instrument with whom the holder has not dealt except
(a) minority, to the extent that it is a defense to a simple contract; and
(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation an absolute nullity; and
(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
(d) discharge in insolvency proceedings; and
(e) any other discharge of which the holder has notice when he takes the instrument. (footnote omitted)
Because of our finding that Thompson is a holder in due course, he took the note free of any defense H & S may have had against Hughes.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. H & S is cast for all costs.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 3158 sets forth the formalities and contents of a pledge, as well as the requirements for the pledge of promissory notes and other written obligations, as follows:

But this privilege shall take place against third persons only in case the pledge is proved by some written instrument, in which shall be stated the amount of the debt intended to be secured thereby, and the species and nature of the thing given in pledge; or the description of the thing pledged may be contained in a list or statement annexed to the instrument of pledge and giving its number, weight or descriptive marks.
When a debtor wishes to pledge promissory notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or written obligations of any kind, he shall deliver to the creditor the notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or other written obligations, so pledged, and such pledge so made, except as hereinafter provided with regard to life insurance policies, shall without further formalities be valid as well against third persons as against the pledger thereof, if made in good faith, provided that where the pledge of instruments not negotiable, the debtor must be notified thereof, it being understood that no notification is required in the case of the pledge of certificates of corporation stock. All pledges may be made by private writing of any kind if only the intention to pledge be shown in writing, but all pledges, except of a life insurance policy in favor of the insurer, must be accompanied by actual delivery. The pledge of a life insurance policy must also be evidenced by a written assignment thereof as security to the pledgee and by delivery of the pledge or assignment to the insurer and, unless the beneficiary thereof may be changed upon the sole request of the insured, or unless pledge or assignment without the consent of the beneficiary be specifically provided for in the policy, must be accompanied by the consent of any named beneficiary who is not the insured or his estate; it is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them; the delivery of property on deposit in a warehouse, cotton press, or on storage with a third person, or represented by a bill of lading, shall pass to the pledgee by the mere delivery of the warehouse receipt, cotton press receipt, bill of lading, or storage receipt, showing the number, quantity or weight of the thing pledged; and such pledge so made, without further formalities, shall be valid as well against third persons as against the pledger thereof, if made in good faith. Such receipts shall be valid and binding in the order of time in which they are issued for the number, quantity, or weight of the things pledged, if there should not be enough to meet all receipts so issued. Nothing herein contained shall be construed to repeal any part of Title 9, Sections 4301 to 4382, both inclusive of the Louisiana Revised Statutes of 1950.
[2] The agreement between H & S and Hughes, which was introduced into evidence as "D-2" provided:

March 1, 1984
I, H. David Hughes accept for payment of note $130,000.00 dated March 8, 1981 paid down to $111,096.50 the sum of $40,000.00 check # 1804 drawn on account of H. & S. Packing Co., Inc. and J.L. NESmith, Sr. agree to pay H. David Hughes the sum of $25,000.00 at the end of two(2) years with no interest.
 H. David Hughes
 /s/ H. David Hughes
CC